UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEAGEN INC.,<br><br>    Petitioner,<br><br>v.<br><br>DAIICHI SANKYO CO., LTD.,<br><br>    Respondent. | No. 2:22-cv-01613-TL<br><br>**DAIICHI SANKYO COMPANY, LIMITED'S RESPONSE TO SEAGEN INC.'S MOTION TO SEAL (1) MEMORANDUM I/S/O PETITION TO VACATE ARBITRATION AWARD, AND (2) EXHIBITS 1, 3–44, 46–50, AND 53–66 TO THE DECLARATION OF MATTHEW CHIVVIS I/S/O MEMORANDUM**<br><br>**NOTE ON MOTION CALENDAR: DECEMBER 23, 2022** |

I. INTRODUCTION

Daiichi Sankyo Company, Limited ("DSC") hereby responds to Seagen Inc.'s ("Seagen's") Motion to Seal (Dkt. 9).[1] Since Seagen filed its Motion to Seal, the Parties have conferred regarding the materials subject to Seagen's motion. The Parties have reached an agreement with respect to (1) redactions to Seagen's Memorandum and (2) Exhibits 5, 10, 11, and 17 that could potentially be unsealed.[2] DSC believes that the Parties' agreement effectuates the goal of ensuring public access to the Court's records while preserving the sensitive, confidential information contained in the remaining exhibits that accompany Seagen's Memorandum.

With respect to the remaining exhibits that are the subject of Seagen's Motion to Seal, DSC believes that judicial efficiency would be best served by deferring a decision on whether to maintain them under seal until this Court decides the merits of Seagen's Petition. There is a significant possibility that this Court will not even have to consider many of these exhibits in resolving Seagen's Petition. As DSC's forthcoming opposition to Seagen's Petition will demonstrate, Seagen's Petition is untimely because it was not served within the statutorily required time. The Petition should be denied on that basis alone, without the need to address Seagen's vacatur arguments or to consider the accompanying exhibits. Even if this Court does reach Seagen's arguments, the Court may very well find it unnecessary to consider the vast

---

[1] DSC appears for the limited purpose of responding to Seagen's Petition to Vacate the Arbitration Award ("Seagen's Petition," Dkt. 1), and the related memorandum that Seagen filed days later ("Seagen's Memorandum," Dkt. 11), as well as to protect DSC's proprietary and confidential information submitted by Seagen.

[2] Exhibits 5, 10, 11, and 17 consist of three Arbitrator Orders and DSC's request to file a dispositive motion in the Arbitration. DSC believes these exhibits do not need to be maintained under seal, but suggests that the Court defer the decision regarding sealing these exhibits until the Court decides the merits of Seagen's Petition. This is because review of these materials is not necessary to resolve Seagen's Petition. *See infra* at 3-5.

Daiichi Sankyo Company,
Limited's Response – Page 1
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

majority of the 66 exhibits Seagen submitted.  This is because Seagen's submitted exhibits largely appear to be an impermissible attempt to have this Court overturn and disregard the Arbitrator's factual findings.  As courts in this District (and elsewhere within this Circuit) have explained, when exhibits subject to a motion to seal are unnecessary to a court's merits decision, those exhibits can remain sealed because they will not enhance public understanding of the judicial process.

In any event, because Seagen's vacatur arguments are predicated on this Court disregarding the Arbitrator's factual findings, this Court would be better able to evaluate the sensitive and confidential nature of the exhibits in question once it has had the opportunity to acquaint itself with the substance of the underlying confidential arbitration by considering Seagen's vacatur arguments and DSC's forthcoming opposition to Seagen's Petition.  If the Court nevertheless wishes to decide the sealing issues now, the Parties agree that the Court should maintain the majority of the exhibits under seal.  Those exhibits contain DSC's highly-confidential information regarding the development and design of DSC's proprietary pharmaceutical technology in the area of antibody-drug conjugates ("ADCs"), disclosure of which could cause undue prejudice and substantial irreparable harm to DSC.  The nature of the Parties' documents, which the Parties expressly designated as "Confidential" or "Highly Confidential" in the Arbitration, and the limited amount of (and low public interest in) the remaining non-confidential information would make redactions unduly burdensome and nearly impracticable.

II.     **LEGAL STANDARD**

"The federal common law right of access [to court records] is not absolute," and "can be overcome by sufficiently important countervailing interests." *San Jose Mercury News, Inc. v.*

Daiichi Sankyo Company,
Limited's Response – Page 2
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*U.S. Dist. Ct. N. Dist. (San Jose)*, 187 F.3d 1096, 1102 (9th Cir. 1999) (citation omitted). The relevant interests include whether disclosure of the material could "release trade secrets" or be used as "sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns., Inc.*, 435 U.S. 589, 598 (1978); *see also* LCR 5(g)(3)(B). As part of its docket-management authority, the Court has broad discretion to decide when to rule on a motion to seal. *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir. 1995).

### III. ARGUMENT

#### A. This Court Should Defer the Determination of Whether the Exhibits Submitted with Seagen's Memorandum Should Be Kept Under Seal Until It Has Decided the Merits of Seagen's Petition

DSC respectfully requests that the Court exercise its discretion and defer whether to maintain under seal exhibits to Seagen's Memorandum until the Court has decided the merits of Seagen's Petition. Under the Court-approved schedule, Seagen's Petition will be fully briefed by February 10, 2023, and is noted for the Court's calendar for that day. Shortly after that date—which is only eight weeks away—the Court will likely know whether it will even need to consider most of the exhibits that Seagen has submitted.

DSC believes that the Court will not need to do so. *First*, as DSC will explain in its forthcoming opposition, Seagen's Petition is incurably untimely. Seagen was required to serve its Petition on DSC by methods specifically prescribed under the Federal Arbitration Act ("the FAA")—or at least by methods authorized by Federal Rule of Civil Procedure 4(h)(2) for service on non-resident foreign corporations—within three months of the Award's filing or delivery (which was August 12, 2022). *See* 9 U.S.C. § 12; Fed. R. Civ. P. 4(h)(2). Seagen has done neither at all, let alone in a timely fashion. Instead, Seagen sent its Petition to DSC by facsimile and to its counsel of record in the Arbitration by fax and email (and not to a proper officer or

Daiichi Sankyo Company,
Limited's Response – Page 3
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

agent authorized to receive process) on November 10, 2022. Even misconstruing this fax and/or email as an attempt at "alternative service" under Fed. R. Civ. P. 4(f)(3), prior Court approval would have been required, *see Brockmeyer v. May*, 383 F.3d 798, 805-06 (9th Cir. 2004), which Seagen did not seek. Because the FAA's requirements for service of vacatur petitions are strictly construed, *see, e.g.*, *IKON Glob. Mkts. v. Appert*, No. C11-53RAJ, 2011 U.S. Dist. LEXIS 155108, at *8 (W.D. Wash. July 28, 2011), Seagen's Petition is untimely, and that defect cannot be cured *nunc pro tunc*. This is one principal reason to defer the decision on whether to maintain the submitted exhibits under seal until the Court determines whether consideration of that material is even necessary.

*Second*, even if the Court reaches Seagen's substantive arguments, the highly deferential standard of review for arbitral awards should render it unnecessary to decide whether many of Seagen's exhibits should be kept under seal. Seagen submitted over 60 exhibits to shore up its improper attempt to have this Court overturn and disregard the Arbitrator's factual findings—an effort foreclosed by Circuit precedent. *See Kyocera Corp. v. Prudential-Bach Trade Servs., Inc.*, 341 F.3d 987, 1002-03 (9th Cir. 2003) (*en banc*). As DSC will explain in its forthcoming opposition to Seagen's Petition, under the proper standard of review, this Court will not need to even consider the vast majority of Seagen's submitted exhibits.

This Court, as part of its broad discretion to manage its docket, can defer its decision on Seagen's Motion to Seal until later in the case, particularly because the delay will not be lengthy. *See Global Indus. Inv. Ltd. v. 1955 Cap. Fund I GP LLC*, 2022 U.S. Dist. LEXIS 172676 (N.D. Cal. Sep. 23, 2022) (delaying a decision on a motion to seal until after the issuance of a merits decision on whether to confirm or vacate an arbitral award, based on the respondents' request).

Daiichi Sankyo Company,
Limited's Response – Page 4
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

When documents subject to a motion to seal are unnecessary to a court's merits decision, those documents can remain sealed on the court's docket. *See, e.g.*, *Bloom Energy Corp. v. Badger*, No. 21-cv-02154-PJH, 2021 U.S. Dist. LEXIS 170360, at *37 (N.D. Cal. Sept. 8, 2021) ("[T]he court does not cite and need not refer to . . . 13 documents [subject to a motion to seal] when reaching its decision on the [merits]. Given that, the court does not need to consider whether to seal them . . . These 13 documents will remain protected from public view."); *Edifecs, Inc. v. Tibco Software*, No. C10-330-RSM, 2011 U.S. Dist. LEXIS 166576, at *9 (W.D. Wash. Sept. 23, 2011) (finding the motion to seal moot because the court did not rely on the documents in question in reaching its decision on the merits and stating that "[b]ecause Plaintiff cannot withdraw the sealed documents, they shall remain sealed on the Court's docket."). This is because "the public interest in understanding the judicial process"—one of the factors in deciding whether to maintain court-filed documents under seal, *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (internal quotation marks and citations omitted)—is not implicated when these documents formed no part of the judicial deliberative process. In this case, deferring consideration of whether to maintain Seagen's exhibits under seal may obviate the need to decide that question altogether, thereby conserving this Court's resources.

**B.    The Court Should Maintain Under Seal Exhibits
Containing DSC-Designated Confidential Information**

To the extent this Court decides to address the continued sealing of exhibits to Seagen's Memorandum now, it should maintain under seal the exhibits containing DSC confidential information (Exhibits 7, 9, 13, 22-26, 38, 41-44, 46-49, 53-59, and 65).[3] There are "sufficiently

---

[3] DSC understands that Seagen agrees to the sealing of FDA and development documents, lab notebooks, internal communications and a DSC scientist's deposition transcript, which includes Exhibits 38, 41-44, 47-48, 53-59, and 65.

Daiichi Sankyo Company,
Limited's Response – Page 5
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

important countervailing interests" to keep those exhibits sealed, *San Jose Mercury News*, 187 F.3d at 1102, because they contain confidential, proprietary business information regarding the development and design of DSC's ADC technology.

1. **DSC's BLA and Development Documents (Exhibits 38, 41-44, 47-48, and 53-55) Should Remain Under Seal in their Entirety**

Compelling reasons exist to maintain DSC's Biologics License Application ("BLA") documents, which were submitted to the FDA for approval of its ADCs, as well as its development documents for those (and future) ADCs (Exhibits 38, 41-44, 47-48, and 53-55) under seal in their entirety. DSC designated these documents as "Highly Confidential" in the Arbitration because they contain confidential, proprietary business information regarding the development and design of DSC's ADC technology, the disclosure of which would constitute irreparable harm to DSC. Specifically, Exhibits 38, 47, and 48 discuss internal confidential research detailing DSC's strategy for designing its ADC technology, including confidential information that is actively being used for the development of future ADCs, including potential antigen targets for future ADCs and the status of ADCs in DSC's pipeline. Exhibits 41-44 are non-public BLA documents that contain DSC's proprietary trade-secret information. Specifically, these exhibits depict and contain descriptions of DSC's proprietary ADC manufacturing processes (*e.g.*, reduction, conjugation, purification, and formulation) and go as far as to describe the manufacturing steps, use flow diagrams/tables, and detail procedures for each manufacturing step (*e.g.*, thawing, reduction, conjugation, purification, pH and composition adjustment, filling and freezing, and preparation of buffers). Exhibits 53-55 are non-public laboratory notebooks of DSC scientists that detail synthetic methods for various DSC drug linkers, buffer exchange procedures, and conjugation and purification methods. This information

Daiichi Sankyo Company,
Limited's Response – Page 6
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

also contains DSC's trade-secret and confidential intellectual property information that will cause DSC irreparable harm if obtained by competitors.

The information contained within DSC's BLA and development documents (Exhibits 38, 41-44, 47-48, and 53-55) remains sensitive, and any disclosure would hurt DSC's current business interests by giving its competitors access to its confidential product development processes. The goal of preventing release of sensitive, confidential, or trade-secret information justifies keeping these exhibits under seal. *See Nixon*, 435 U.S. at 598; *Hagestad*, 49 F.3d at 1434. Conversely, the public's interest in these documents is minimal (if any) because they will either be (1) not germane to the Court's merits decision or, at most, (2) only tangentially related, given the highly deferential standard of review that does not allow judicial reexamination of an arbitrator's factual findings. Given that the information in DSC's BLA and development documents is highly confidential, redacting those documents would not further the goal of public access because (a) the extensive redactions necessary to protect DSC's sensitive information would render those documents essentially indecipherable, and (b) the limited unredacted information would not enhance public understanding of the judicial process.

    **2.**    **The Other Documents Containing DSC's Confidential Information (Exhibits 7, 9, 13, 22-26, 46, 49, 56-59, and 65) Should Also Remain Under Seal in their Entirety**

The other exhibits containing DSC-designated confidential information (Exhibits 7, 9, 13, 26, 46, 56-59, and 65) include DSC's Arbitration hearing briefs, a request to the Arbitrator to file a dispositive motion, documents from the Parties' collaboration, and excerpts from the deposition transcript of a DSC factual witness in a different court proceeding involving the Parties. These documents should also remain under seal because they likewise contain DSC's highly confidential business information, the disclosure of which could cause DSC competitive

Daiichi Sankyo Company,
Limited's Response – Page 7
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

harm. These exhibits should be maintained under seal in their entirety because (a) the limited unredacted information would not enhance public understanding of the judicial process, and (b) redacting them to protect DSC's highly confidential information would be unduly burdensome. If the Court declines to maintain any of these documents under seal in their entirety, DSC respectfully requests that it be allowed an opportunity to confer with Seagen and to propose for the Court's consideration appropriate redactions that protect both Parties' confidential information. DSC understands Seagen agrees with this approach.

Exhibits 7, 9, and 13 (designated as "Highly Confidential" in the Arbitration) consist of DSC's Arbitration briefs, which quote and characterize DSC's confidential and highly confidential information including, *inter alia*, the contents of DSC regulatory documents, scientists' laboratory notebooks, internal correspondence regarding DSC's research, sensitive financial information regarding DSC's investment in its ADC technology, and the amount of damages and the royalty rates in dispute in the Arbitration. *See, e.g.*, Ex. 7 at 4-7; Ex. 9 at 26, 64-71; Ex. 13 at 52, 57. Disclosure of this highly confidential business and financial information to competitors could harm DSC's business interests and competitive standing.

Exhibits 56-59 (designated as "Highly Confidential" in the Arbitration) contain internal business communications from the period during DSC's collaboration with Seagen that could reveal DSC's internal strategy for similar research collaborations. These exhibits should be maintained under seal in their entirety, because redacting them to protect DSC's highly confidential information would render them not useful to the public in understanding the judicial process.

Daiichi Sankyo Company,
Limited's Response – Page 8
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Exhibit 65 is an excerpt of the deposition transcript of a DSC scientist who testified as a factual witness in a different court proceeding involving the Parties, *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG (E.D. Tex.). This deposition transcript (except for a small portion that has been made public) is marked "Highly Confidential" and consists of testimony detailing the scientist's ADC synthesis work and the details of experiments contained within his DSC laboratory notebooks. *See, e.g.*, 266:18-20, 24-25; 267:3-5, 8; 268:2-24. The highly confidential portion of this exhibit contains DSC's proprietary business information and its disclosure could similarly harm DSC's business interests by making public internal research and development of DSC's ADC technology.

Exhibits 22-26, 46, and 49 should also be kept under seal because they are confidential drafts of the Parties' Collaboration Agreement and accompanying emails regarding the contractual negotiations between Seagen and DSC. As Seagen indicated in its Motion to Seal (Dkt. 9 at 3), Exhibits 22-25 and 49 contain sensitive business information regarding the negotiated royalty and similar commercial terms of the Parties' partnership. Disclosure of these exhibits, as well as Exhibits 26 and 46 (emails exchanged between the Parties' representatives in the course of contract negotiations) would reveal DSC's commercial negotiating strategy to its competitors or its potential partners.

### C. DSC Does Not Oppose Seagen's Request to Seal the Other Exhibits, and Compelling Reasons Support Sealing at Least Exhibits 1, 3, 6, 8, 12, 14-16, 18, 61, 63, and 66

Seagen requested to place Exhibits 1, 3, 6, 8, 12, 14-16, 18-25, 27-37, 39-40, 49-50, 60-64 and 66 under seal. *See* Dkt. 9 at 3. DSC does not oppose this request—but, as explained above, believes the Court should defer its decision until it decides the merits of Seagen's Petition. Critically, in the Arbitration, the Parties expressly marked these documents

Daiichi Sankyo Company,
Limited's Response – Page 9
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"Confidential" or "Highly Confidential." These exhibits, therefore, should be maintained under seal because they contain DSC's confidential and highly confidential trade-secret, business, and financial information, the disclosure of which would significantly harm DSC or place it at a competitive disadvantage.[4]

As to the Collaboration Agreement (Ex. 1), DSC does not oppose Seagen's request (Dkt. 9 at 3) to keep it under seal. DSC notes, however, that portions of the Collaboration Agreement have been made public through Seagen's SEC filings on November 7, 2008. If the Court determines that the entire Collaboration Agreement should not be sealed, DSC asks that the Court permit sealing of the Collaboration Agreement's provisions that are redacted in the SEC filing. These provisions contain confidential, sensitive information regarding the Parties' financial arrangement and their collaboration's research plan.

Further, Exhibit 3 is Seagen's June 24, 2020 Amended Arbitration Demand, which describes and quotes DSC's confidential information including, *inter alia*, the communications and non-final drafts of the Collaboration Agreement. *See, e.g.*, Ex. 3, ¶¶ 30, 43. Exhibit 8 is the report of Seagen's expert George Gould, which characterizes DSC's confidential information, including, *inter alia*, confidential communications and non-final drafts exchanged between the Parties in furtherance of negotiating an agreement. *See, e.g.*, Ex. 8, ¶¶ 80-82, 85-86, 95-96, 107. Disclosure of this confidential business and financial information would harm DSC, particularly with respect to any future research collaboration or licensing agreement negotiations.

---

[4] During the Parties' meet and confer, Seagen indicated that redacted versions of Exhibits 7, 9, 12-16, and 66 could be filed. As with the other exhibits containing DSC's confidential information, if the Court declines to maintain any of these exhibits under seal in their entirety, DSC respectfully requests that it be allowed an opportunity to confer further with Seagen and to propose appropriate redactions. DSC does not believe Exhibits 19-21, 27-37, 39-40, 50, 60, 62, and 64 contain any DSC confidential information, but does not oppose Seagen's request to seal.

Daiichi Sankyo Company,
Limited's Response – Page 10
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Exhibits 6 and 18 consist of the reports of a Seagen expert witness, which describe DSC's confidential and highly confidential information including, *inter alia*, the contents of DSC's regulatory documents, scientists' laboratory notebooks, research documents evidencing DSC's independent development of its ADC technology, as well as confidential communications between the Parties in furtherance of negotiating an agreement. *See, e.g.*, Ex. 6, ¶¶ 56, 60, 73, 88, 93, 96-97, 100-03, 105-06, 114, 117; *id.* at Annexes B, D, E; Ex. 18, ¶¶ 3-20.

Exhibits 12, 14, 15, and 16 consist of Seagen's briefs in the Arbitration. These exhibits describe DSC's confidential and highly confidential trade-secret, business, and commercial information including, *inter alia*, confidential communications exchanged between the Parties in furtherance of negotiating an agreement, scientists' laboratory notebooks, DSC's independent development of its ADC technology, including pipeline products, and the amount of damages and the royalty rates in dispute in the Arbitration. *See, e.g.*, Ex. 12 at 1, 7-14, 16, 34-35, 38-40, 43, 46-47, 50, 66-68; Ex. 14 at 13-16; Ex. 15 at 2-6, 8; Ex. 16 at 1-2, 7-8, 10-11, 18, 44-50.

Exhibits 61 and 63 consist of fact witness statements from Seagen's corporate employees in the Arbitration. These exhibits characterize DSC's confidential information, including, *inter alia*, confidential communications and non-final drafts exchanged between the Parties in furtherance of negotiating an agreement. *See, e.g.*, Ex. 61, ¶¶ 9-12, 15-18; Ex. 63, ¶¶ 18-51.

Exhibit 66 consists of excerpts of transcripts from the Arbitration hearing, which characterize DSC's confidential information, including, *inter alia*, internal communications from the period during its collaboration with Seagen. *See, e.g.*, Ex. 66 at 1754:21-1755:6. Disclosure of this information could disadvantage DSC in future agreement negotiations.

Daiichi Sankyo Company,
Limited's Response – Page 11
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### D. The Parties Jointly Propose Appropriate Redactions to Seagen's Memorandum

The Parties have discussed redactions to Seagen's Memorandum, a proposed version of which is attached as Appendix A.[5] While Seagen's Memorandum includes a false, misleading narrative of the factual record in the Arbitration that the Arbitrator expressly rejected, DSC's proposed redactions seek to safeguard the Parties' sensitive proprietary information derived from confidential intellectual property development documents or internal business communications. If disclosed, this information would reveal DSC's internal strategy to drug development. These redactions are limited and would not impede the public's ability to follow Seagen's arguments.

## IV. CONCLUSION

For these reasons, DSC respectfully requests that the Court:

(a) accept the filing of a public, redacted version of Seagen's Memorandum (consistent with Appendix A); and

(b) (1) defer its decision with respect to the exhibits that are the subject of Seagen's Motion to Seal (Dkt. 9) until the Court has considered Seagen's Petition; or (2) in the alternative, maintain Exhibits 3, 6-9, 12-16, 18-44, 46-50, 53-66 to Seagen's Memorandum under seal in their entirety.

---

[5] Seagen's assertion that DSC "has not responded to Seagen's request for a meet and confer" regarding its Motion to Seal (Dkt. 9 at 2-3) is misleading. Seagen contacted DSC with a request for a meet and confer on the evening of November 10, 2022—on the eve of a federal holiday, Veterans Day (which was November 11, 2022)—and then filed its Memorandum (along with 66 exhibits) the following business day, November 14, 2022. That effort falls short of the Court's Standing Order, requiring at least three business days between an effort to meet and confer and the filing of a motion. Nor could Seagen have realistically expected that the Parties would reach agreement on the necessary redactions to over 60 exhibits containing confidential information over a holiday weekend, and especially where Respondent's in-house representatives responsible for this matter reside in Japan. In any case, as discussed in this response, DSC has now met and conferred with Seagen.

Daiichi Sankyo Company,
Limited's Response – Page 12
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED: December 19, 2022

CORR CRONIN LLP

*/s/ Jack M. Lovejoy*
Steven W. Fogg
WSBA No. 23528
sfogg@corrcronin.com
Jack M. Lovejoy
WSBA No. 36962
jlovejoy@corrcronin.com
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Telephone: (206) 625-8600
Fax: (206) 625-0900

OF COUNSEL:

Preston K. Ratliff II
prestonratliff@paulhastings.com
Dana Weir
danaweir@paulhastings.com
Amanda L. Pober
amandapober@paulhastings.com
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000

Joseph R. Profaizer
joeprofaizer@paulhastings.com
Igor V. Timofeyev
igortimofeyev@paulhastings.com
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1700

*Attorneys for Respondent
Daiichi Sankyo Company, Limited*

Daiichi Sankyo Company,
Limited's Response – Page 13
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2022, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jack M. Lovejoy*

Daiichi Sankyo Company,
Limited's Response – Page 14
No. 2:22-cv-01613-TL

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900