THE HONORABLE JUDGE TANA LIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEAGEN INC.,

                Petitioner,

v.

DAIICHI SANKYO CO., LTD.,

                Respondent.

No. 2:22-cv-01613-TL

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**

**NOTE ON MOTION CALENDAR:
February 10, 2023**

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     RELEVANT BACKGROUND..............................................................................3

        A.      Seagen's Wrongful Attempt to Misappropriate DSC's Technology .....................3

        B.      Selection of the Arbitrator, the Arbitral Hearing, and the Award .........................4

III.    JURISDICTION ....................................................................................................6

IV.     ARGUMENT ........................................................................................................7

        A.      Legal Standard ............................................................................................7

        B.      Seagen's Petition to Vacate Should Be Denied As Meritless ...............................8

                1.      Seagen Misrepresents the Award's Rulings Regarding Application
                        of a Statute of Limitations to Seagen's Quiet Title Claim.........................8

                2.      Seagen Impermissibly Asks the Court to Disregard
                        the Arbitrator's Factual Findings and Legal Conclusions .......................11

                3.      Seagen Fails to Acknowledge the Arbitrator's Factual Finding that
                        DSC's Technology Does Not Even Meet the First Eligibility
                        Criterion for Assignable Technology Under the Parties' Agreement .......18

        C.      Seagen's Petition to Vacate Should Also Be Dismissed As Untimely ................20

V.      SEAGEN'S BAD FAITH PETITION JUSTIFIES
        AWARDING DSC ITS COSTS AND ATTORNEYS' FEES ........................................22

VI.     CONCLUSION ...................................................................................................24

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT** – Page i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharms, Inc.*,
   660 F. 3d 281 (7th Cir. 2011) ......................................................................................8

*Albra v. Advan, Inc.*,
   490 F.3d 826 (11th Cir. 2007) ...................................................................................20

*Aperion Care, Inc. v. Senwell Senior Inv. Advisors*,
   No. 22 C 3120, 2022 WL 10505696 (N.D. Ill. Oct. 17, 2022)...............................21

*Aspic Engineering v. ECC Centcom Constructors LLC*,
   913 F.3d 1162 (9th Cir. 2019) ...................................................................................16

*B.L. Harbert Int'l, LLC v. Hercules Steel Co*.,
   441 F.3d 905 (11th Cir. 2006) .............................................................................22, 24

*Ballantine v. Dominican Republic*,
   No. 19-cv-3598 (TJK), 2020 WL 4597159 (D.D.C. Aug. 11, 2020)....................20

*Belz v. Morgan Stanley Smith Barney, LLC*,
   No. 3:13-cv-636-J-34 MCR, 2014 WL 897048 (M.D. Fla. Mar. 5, 2014) ............20

*Benedict v. Amgen USA Inc.*,
   No. 1:19-cv-113, 2019 WL 1597007 (N.D. Ohio Apr. 15, 2019) .........................21

*Bosack v. Soward*,
   586 F.3d 1096 (9th Cir. 2009) ............................................................... 7, 9, 14, 17

*Bradbury v. Nethercutt*,
   95 Wash. 670 (1917) ...................................................................................................10

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) .....................................................................................20

*Budinich v. Becton Dickinson and Co.*,
   486 U.S. 196 (1988) ......................................................................................................7

*Camarata v. McDonald's Corp.*,
   No. C19-6236JLR, 2021 WL 1893753 (W.D. Wash. May 11, 2021) ...................19

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT**– Page ii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ........................................................................... 13, 14

*Collins v. D.R. Horton, Inc.*,
   505 F.3d 874 (9th Cir. 2007) ................................................................ 8, 17

*Comedy Club, Inc. v. Improv West Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ............................................................... 7, 8

*Coutee v. Barrington Capital*,
   336 F.3d 1128 (9th Cir. 2003) ......................................................... 2, 14, 17

*Dalla-Longa v. Magnetar Cap. LLC*,
   33 F.4th 693 (2d Cir. 2022) ...................................................................... 21

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists*
   *& Aerospace Workers, Dist. No. 8*,
   802 F.2d 247 (7th Cir. 1986) ..................................................................... 23

*Hall Street Assocs., L.L.C. v. Mattel, Inc*.,
   552 U.S. 576 (2008) .................................................................................... 8

*Hyosung (America) Inc. v. Tranax Techns. Inc.*,
   No. C 10- 0793 VRW, 2010 WL 1853764 (N.D. Cal. May 6, 2010) ................. 6, 7

*IKON Global Mkts., Inc. v. Appert*,
   No. C11-cv-53RAJ, 2011WL 9687842 (W.D. Wash. July 28, 2011) .................. 20

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,
   341 F.3d 987 (9th Cir. 2003) (en banc) ................................................... 7, 17

*Lagstein v. Certain Underwriters at Lloyd's, London*,
   607 F.3d 634 (9th Cir. 2010) ..................................................................... 22

*Lewis v. Circuit City Stores, Inc.*,
   500 F.3d 1140 (10th Cir. 2007)................................................................... 22

*Med. Shoppe Int'l Inc. v. Turner Inv.*,
   614 F.3d 485 (8th Cir. 2010) ....................................................................... 8

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran*
   *v. Cubic Defense Sys., Inc.*,
   665 F.3d 1091 (9th Cir. 2011) .................................................................... 22

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**– Page iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*O'Neal Constructors, LLC v. DRT Am., LLC*,
    991 F.3d 1376 (11th Cir. 2021) ................................................................21

*Olson v. Harland Clarke Corp.*,
    No. C11-5585 BHS, 2014 WL 2589453 (W.D. Wash. June 10, 2014),
    *aff'd*, 676 F. Appx. 635 (9th Cir. 2017) ........................................... 14, 17

*Oxford Health Plans LLC v. Sutter*,
    569 U.S. 564 (2013) ...................................................................*passim*

*Pharmangiaga Berhad v. E*HealthLine.com*,
    344 F.Supp.3d 1136 (E.D. Cal. 2018) ................................................ 18, 23

*Protech Minerals, Inc. v. Suzuki*,
    No. 2:20-cv-00969-TSZ, 2020 WL 6939637 (W.D. Wash. Nov. 25, 2020)....... 19, 22

*Purus Plastics GmbH v. Eco-Terr Distrib., Inc.*,
    No. C18-0277, 2018 WL 3064817 (W.D. Wash. June 21, 2018) ......................23

*RSD AAP, LLC v. Alyeska Ocean, Inc.*,
    190 Wash. App. 305, 314 (2015) ..............................................................16

*Shaut v. Hatch*,
    No. 1:18-cv-420, 2018 WL 3559081 (N.D. Ohio July 24, 2018) .....................21

*Sea Shipping Inc. v. Half Moon Shipping, LLC*,
    848 F. Supp. 2d 448 (S.D.N.Y. 2012) ......................................................19

*SSA Terminals v. Machinists Auto. Trades Dist. Lodge No. 190*,
    244 F. Supp. 2d 1031 (N.D. Cal. 2003) ................................................ 23, 24

*Stevens v. Jiffy Lube Int'l, Inc.*,
    911 F.3d 1249 (9th Cir. 2018) ................................................................20

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ......................................................................... 8, 23

*Technologists, Inc. v. MIR's Ltd.*,
    725 F. Supp. 2d 120 (D.D.C. 2010) .........................................................20

*U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*,
    591 F.3d 1167 (9th Cir. 2010) .................................................................8

*Webster v. A.T. Kearney, Inc.*,
    507 F.3d 568 (7th Cir. 2007) ..................................................................20

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page iv

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1

**Statutes**

9 U.S.C.

§ 10 .................................................................................................................... 7, 22, 23

§ 10(a)(4) ........................................................................................................ 7, 8, 17, 22

§ 12 ............................................................................................................................ 20, 21

**Rules**

AAA Commercial Arbitration Rules

R-43(a) ......................................................................................................................... 21

R-43(b) ......................................................................................................................... 21

Fed. R. Civ. P.

R. 4 ........................................................................................................................ 20, 21

R. 4(f)(3) ...................................................................................................................... 20

R. 54(d)(2)(B) .............................................................................................................. 24

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT** – Page v

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# I.   INTRODUCTION

In November 2019, Seagen Inc. ("Seagen") filed a Demand for Arbitration against Daiichi Sankyo Company, Limited ("DSC") alleging breach of contract and seeking to quiet title.  Through its claims, Seagen sought to extract from DSC *tens of billions of dollars*, *plus* worldwide ownership of DSC's proprietary portfolio of targeted drugs for treating patients suffering from deadly cancers, *plus* global patent rights to more than 350 DSC patents and patent applications.  The Parties jointly appointed a former federal judge with over 35 years of experience (as a judge and an arbitrator) handling complex commercial cases, particularly in the areas of intellectual property and pharmaceuticals, to be their arbitrator in the underlying arbitration ("the Arbitrator").  Now that the Arbitrator has found Seagen's claims against DSC to be both time-barred and substantively meritless, Seagen labels the Arbitrator's rulings "completely irrational" and asks this Court to disregard the factual findings, credibility determinations, and legal conclusions the Parties entrusted the Arbitrator to make.  The only thing that is irrational is Seagen's effort to prolong the Parties' dispute with a Petition to Vacate ("the Petition") that misrepresents the Interim Award's ("the Award's") rulings, makes unfounded scattershot attacks on the Arbitrator's contractual interpretations, and ignores the binding standard of review that forecloses vacatur of the Arbitrator's factual and legal findings.

The Arbitrator conducted two extensive evidentiary hearings, carefully considered Seagen's arguments, and denied Seagen's claims against DSC on three independent grounds.  With respect to the first ground (statute of limitations), Seagen contends that the Arbitrator manifestly disregarded the law as to Seagen's quiet title claim.  Seagen argues that the Arbitrator held there is no statute of limitations for quiet title actions under Washington law, but then applied one anyway.  Seagen fundamentally misrepresents the Award.  In reality, the Award states that "*[a]s a general matter*," Washington law does not appear to set a time limit on quiet title actions—but then explains in the very next sentence that "*persuasive authority*" under Washington law

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 1

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

establishes that the applicable limitations period is "determined by examining the 'gravamen' of the underlying cause of action." Award at 36 (emphasis added). The Arbitrator further explained, as a matter of Washington law, that because the gravamen of Seagen's quiet title claim was "quintessentially contractual," it was governed by Washington's six-year statute of limitations for breach of contract actions. Award at 37-38. Specifically, the Arbitrator found the right to the property to which Seagen sought quiet title was governed by the Parties' Collaboration Agreement ("the Agreement"). *See* Award at 36-37.

With respect to the Award's second independent ground, Seagen misleadingly contends that the Arbitrator ignored two subsections of the Parties' contract when he analyzed whether DSC's technology related to "Drug Conjugation Technology"—an essential requirement for any assignment to Seagen under Section 3.3.1 of the Agreement. But the Award itself demonstrates that the Arbitrator considered the entirety of Section 1.1.17, as well as the related Section 1.1.32 (containing the predicate requirement for assignment), together with the Parties' voluminous evidence regarding construction of those provisions. *See* Award at 39-41 & n.10. The Arbitrator's interpretation of Section 1.1.17 reflects his full consideration of the relevant contractual language and the evidence. Seagen ignores well-settled precedent that on judicial review, the sole question is whether "the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

With respect to the third ground, Seagen completely ignores the Award's express factual finding that DSC's technology was not an "Improvement" under the Agreement because DSC's technology did not "'utilize, incorporate, derive directly from, directly relate to, … made using or … based directly on the SGI Technology,'" Award at 45 n.12, and DSC's technology thus *was not subject to any assignment to Seagen.* That finding was based on the Arbitrator's assessment of extensive competing documentary and expert evidence, which a court has "no authority to re-weigh." *Coutee v. Barrington Capital*, 336 F.3d 1128, 1134 (9th Cir. 2003). Seagen's failure to

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 2

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

even mention this independent and dispositive finding—which rejects the very predicate for Seagen's claim that DSC's technology was assignable to Seagen—further illustrates that Seagen's Petition is meritless and was brought in bad faith.

Finally, Seagen's Petition should be dismissed as untimely for failure to serve DSC within the required statutory period. The requirements for service of vacatur petitions are strictly construed in this District, and this defect cannot be cured after the fact. Seagen's Petition should be denied with an award of costs and attorneys' fees to DSC for defending against a time-barred Petition that ignores well-established Supreme Court and Ninth Circuit law.

## II.     RELEVANT BACKGROUND

### A.     Seagen's Wrongful Attempt to Misappropriate DSC's Technology

The underlying Arbitration stems from Seagen's wrongful attempt to misappropriate DSC's ground-breaking antibody-drug conjugate ("ADC") technology, including DSC's drug Enhertu®, which is clinically-approved to treat patients suffering from breast, lung, and stomach cancers. DSC independently invented Enhertu® (also known as "DS-8201") and it "utilizes the proprietary camptothecin DX-8951, which results in the active payload [DXd] by virtue of the non-traceless linker." Award at 40-41; *see also* Award at 43. In support of its scheme to misappropriate DSC's technology, Seagen relied on an old, expired Agreement between the Parties regarding drug research that failed and involved entirely different ADC technology—Seagen's "auristatin-based payload with a traceless linker." Award at 42.

Notably, Seagen openly acknowledged the novelty of DSC's ADC discoveries for years and sought a partnership with DSC. For example, in December 2015, DSC presented its "ground-breaking" ADC technology at a public conference (attended by Seagen), which created "'immediate industry interest.'" Award at 43-44. Seagen's response was to seek a partnership with DSC in January 2016, and again in 2018. When DSC declined Seagen's invitation, Seagen's interest in DSC's technology went far beyond its solicitations to DSC. Recognizing that DS-8201

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 3

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

"'may change the playing field pretty quickly,'" Seagen "undertook an in-depth analysis of DS-8201 not later than March, 2017" in an attempt to develop its own camptothecin-based ADC technology.  Award at 44.  At no point during its analysis did Seagen "suggest[]—and far less clearly express[]—that DSC's ADC technology was plausibly related to or arose from Seagen's ADC technology, either generally or with respect to the Collaboration Agreement."  Award at 44.

In late August 2019, for the first time, Seagen claimed that DSC's technology was actually Seagen's own.  Seagen made that claim not long after DSC announced a multi-billion dollar deal for Enhertu® with a different pharmaceutical company—a "coincidence" the Arbitrator considered "conspicuous."  Award at 35 n.8.

### B.    Selection of the Arbitrator, the Arbitral Hearing, and the Award

On November 12, 2019, Seagen filed a Demand for Arbitration.  *See* Dkt. 12, Ex. 2.  Seagen alleged breach of contract and quiet title claims against DSC.[1]  Section 19.3.4 of the Agreement provides that "[i]f the issues in dispute involve scientific, technical or commercial matters" (as this dispute does), "any arbitrator chosen hereunder shall have educational training and/or industry experience sufficient to demonstrate a reasonable level of relevant scientific, medical and industry knowledge."  Dkt. 12, Ex. 1 at 32.  The Parties jointly appointed Garrett E. Brown, Jr., the former Chief Judge of the United States District Court for the District of New Jersey, as their Arbitrator.[2]

The Arbitration spanned over two years, and included extensive discovery, multiple rounds of briefing, two separate live hearings totaling 10 days,[3] live testimony from 14 fact witnesses and 10 experts, and hundreds of documentary exhibits.  On August 12, 2022, the Arbitrator issued an Award that was "fully and finally dispositive with respect to all factual issues, legal and equitable

---

[1] After DSC challenged Seagen's demand as insufficiently specific, on June 24, 2020, Seagen filed an Amended Demand.  *See* Dkt. 12, Ex. 3.  Seagen's Amended Demand contained the same two claims against DSC.

[2] The Arbitrator's publicly-available curriculum vitae is attached as Ex. 1.

[3] At Seagen's request, made less than a month before the Arbitrator was expected to render the Award, the Arbitrator agreed to reopen the hearing to consider what Seagen claimed was new evidence.  *See* Award, Ex. B.  The Arbitrator also held several preliminary and procedural hearings, including on arbitrability.  *See* Award, Ex. A.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 4

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

arguments, and defenses raised in conjunction with the Parties' claims and requests for relief, with the sole exception of the Parties' respective requests for an award of, *inter alia*, attorneys' fees." Award at 20; *see also* Award at 45.

The Arbitrator found that the applicable Washington six-year statute of limitations barred Seagen's breach of contract claim, Award at 22-29, and rejected Seagen's contrary arguments, including defenses of equitable tolling, equitable estoppel, and fraudulent concealment, Award at 30-36.[4]

Turning to Seagen's quiet title claim, the Arbitrator stated that, "[a]s a general matter," Washington law did not set a time limit on quiet title actions. Award at 36. In the very *next sentence*, the Arbitrator stated: "*However*, … persuasive authority establishes that under Washington State law, the applicable statute of limitations—or the lack thereof—is determined by examining the 'gravamen' of the underlying cause of action. Indeed, under Washington State law, '[t]he gravamen of the claim determines the applicable statute of limitations.'" Award at 36-37 (quoting *Aberdeen Fed. Sav. & Loan Ass'n v. Hanson*, 58 Wash. App. 773, 776 (1990), and citing *Bradbury v. Nethercutt*, 95 Wash. 670, 672 (1917)) (emphasis added) (additional citation omitted). Applying those principles, the Arbitrator was "clearly convinced that on the face of Seagen's Amended Demand, the 'gravamen' of its Quiet Title Claim is … the very same allegation that is the primary thrust of Seagen's subsequently-plead Breach of Contract Claim." Award at 37. Finding that "the gravamen" of Seagen's quiet title claim "is quintessentially contractual," the Arbitrator held that Seagen's quiet title claim was similarly time-barred. Award at 37-38.

Although the time-bar finding was independently dispositive, *see* Award at 38-39, 45, the Arbitrator *also* addressed—and rejected—Seagen's claims on the merits. Award at 39. DSC's technology was subject to assignment to Seagen *only if* it met two requirements: first, it must be an "*Improvement*" and second, it must be an "*Improvement* that relates to the *Drug Conjugation*

---

[4] Seagen's Petition does not challenge the Arbitrator's rejection of its breach of contract claim. Dkt. 11 at 1 n.1.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 5

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Technology,*" as defined in Sections 1.1.32, 1.1.17, and 3.3.1 of the Agreement.  Award at 40; *see also* Dkt. 11 at 5.  After examining these contractual provisions, pertinent Washington law, and the record evidence, the Arbitrator found as to the second requirement for assignment that "the most reasonable meaning" of Section 1.1.17, which defines "Drug Conjugation Technology," is that the scope of that definition was limited "to the actual boundaries of Seagen's ADC technology that is the subject of the Collaboration Agreement."  Award at 41-44.  The Arbitrator specifically noted that DSC and Seagen "commonsensically intended to tether the scope of the term 'Drug Conjugation Technology' to the type of ADC technology that Seagen actually possessed," and that "it defies credulity to suggest that DSC—a sophisticated international pharmaceutical conglomerate—would intentionally agree to assign Seagen 'any right, title and interest' in a potential future drug that utilizes DX-8951, a proprietary cytotoxin that it had already developed at the time the Collaboration Agreement was executed."  Award at 43.

"[F]or completeness," the Arbitrator also ruled that DSC's technology did not meet the first contractual requirement for assignment to Seagen—it did not "meet the definition" of "Improvements" under Section 1.1.32 because DSC's technology "d[id] not 'utilize, incorporate, derive directly from, directly relate to, [was] made using or [was] based directly on the SGI Technology.'"  Award at 45 n.12.  That holding was based on the assessment of the same expert and documentary evidence underpinning his finding that DSC's technology was not assignable to Seagen because it did not "relate[] to Drug Conjugation Technology."  Award at 43-45.

### III.   JURISDICTION

Although the Award is labeled "Interim Award," the Arbitrator expressly stated that the Award was "fully and finally dispositive with respect to all factual issues, legal and equitable arguments, and defenses raised in conjunction with the Parties' claims and request for relief," with the sole exception of requests for costs and attorneys' fees.  Award at 20; *see also* Award at 45.

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**– Page 6

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    A court may review an award that "finally and conclusively dispose[s] of a separate and

2  independent claim." *Hyosung (America) Inc. v. Tranax Techns. Inc.*, No. C 10- 0793 VRW, 2010

3  WL 1853764, at *2 (N.D. Cal. May 6, 2010) (internal quotation marks and citation omitted); *see*

4  *also* Dkt. 11 at 10-11 (Seagen acknowledging that the Award is final as to all its claims).  Because

5  the Award "is fully and finally dispositive" as to all of Seagen's claims, Award at 20, and "the

6  arbitrator's determination of attorney fees is easily severable and distinct," the Award has the

7  requisite finality for the purposes of judicial review.  *Hyosung*, 2010 WL 1853764, at *5; *cf.*

8  *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 200-03 (1988) (attorneys' fees determination

9  is collateral to a merits decision for purposes of appellate review).

## IV.    ARGUMENT

### A.    Legal Standard

12    Section 10(a)(4) of the Federal Arbitration Act ("the FAA") authorizes federal courts to

13  vacate an arbitral award only if the tribunal "exceeded their powers."  9 U.S.C. § 10.  A party

14  challenging an award bears the burden of proof, and a court is "prohibited" from "review[ing] an

15  arbitral] panel's factual findings and legal conclusions."  *Bosack v. Soward*, 586 F.3d 1096, 1104

16  (9th Cir. 2009).  "It is not enough … to show that the [arbitrator] committed an error—or even a

17  serious error … the sole question [under Section 10(a)(4)] is whether the arbitrator (even arguably)

18  interpreted the parties' contract, not whether he got its meaning right or wrong."  *Oxford Health*,

19  569 U.S. at 569.  "Whether or not [an arbitrator's] findings are supported by the evidence in the

20  record is beyond the scope of [court] review."  *Bosack*, 586 F.3d at 1104-05.  "Neither erroneous

21  legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral

22  award under the [FAA] statute."  *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d

23  987, 994 (9th Cir. 2003) (en banc).

24    The Ninth Circuit has held that vacatur under 9 U.S.C. § 10(a)(4) may be warranted where

25  the award is "completely irrational or exhibits a manifest disregard for the law."  *Kyocera*, 341

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 7

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    F.3d at 998. "[T]he 'completely irrational' standard is extremely narrow and is satisfied only

2    where the arbitration decision fails to draw its essence from the agreement." *Comedy Club, Inc.*

3    *v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (internal quotation marks, alteration,

4    and citation omitted). An arbitrator's "plausible interpretation" of the contract does not meet this

5    standard. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010). The

6    "manifest disregard of the law" standard requires "something beyond and different from a mere

7    error in the law or failure on the part of the arbitrators to understand and apply the law." *Collins*

8    *v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). Rather, "the moving party must show that

9    the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Id.*

10   (internal quotation marks, alternations, and citation omitted).

11          The Ninth Circuit has reaffirmed the "manifest disregard" and "complete irrationality"

12   doctrines in the wake of the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel,*

13   *Inc.*, 552 U.S. 576 (2008), *see Comedy Club*, 553 F.3d at 1290, but other courts have concluded

14   (correctly) that *Hall Street* abrogated these doctrines, *see, e.g.*, *Med. Shoppe Int'l Inc. v. Turner*

15   *Inv.*, 614 F.3d 485, 489 (8th Cir. 2010); *Affymax, Inc. v. Ortho-McNeil-Janssen Pharms, Inc.,* 660

16   F. 3d 281, 285 (7th Cir. 2011). The Supreme Court has not yet resolved the question. *See Stolt-*

17   *Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). To the extent the Supreme

18   Court finds these doctrines to be inconsistent with the statutory requirements of Section 10(a)(4),

19   DSC would argue the statutory provisions must control. The Award is not subject to vacatur under

20   any standard.

21          **B.     Seagen's Petition to Vacate Should Be Denied As Meritless**

22          **1.     Seagen Misrepresents the Award's Rulings Regarding
                      Application of a Statute of Limitations to Seagen's Quiet Title Claim**

23

24          Seagen selectively quotes the Award to create an impression the Arbitrator concluded that

25   Washington law contained no statute of limitations for quiet title claims, but applied one anyway.

Dkt. 11 at 21 ("[t]he Award acknowledged that Washington law has no statute of limitations for quiet title claims") (citing Award at 36).  A plain reading of the Award—and of the sentences following Seagen's cropped quotation—demonstrates that the Arbitrator did no such thing:

> As a general matter, Seagen appears to be correct.  *However*, as DSC correctly notes in its Post-hearing Brief, persuasive authority establishes that under Washington State law, the applicable statute of limitations – or the lack thereof – is determined by examining the "gravamen" of the underlying cause of action.  Indeed, under Washington State law, "the gravamen of the claim determines the applicable statute of limitations."

Award at 36-37 (quoting *Aberdeen*, 58 Wash. App. at 776, and citing *Bradbury*, 95 Wash. at 672) (additional citation omitted) (emphasis added).  As the Award shows, the Arbitrator reviewed applicable Washington law, and found that, under Washington law, the applicable limitations period is "determined by examining the 'gravamen' of the underlying cause of action."  Award at 36.  As the Award further explained, because the gravamen of Seagen's quiet title claim was "quintessentially contractual," it was governed by Washington's six-year statute of limitations for breach of contract actions.  Award at 37-38.  The Arbitrator then applied that statute of limitations to bar Seagen's stale quiet title claim.  Award at 37-38.

As Seagen acknowledges, an award exhibits "manifest disregard of the law" only if "'the arbitrator[] recognized the applicable law and then ignored it.'"  Dkt. 11 at 21 (quoting *Comedy Club*, 553 F.3d at 1290).  Seagen does not dispute that the Arbitrator "recognized" the law, *i.e.*, that under Washington law, the statute of limitations applicable to a claim is determined by examining the "gravamen" of the underlying cause of action.  *See* Award at 36-37 (citation omitted).  Nor does Seagen argue that the Arbitrator "ignored" this applicable law.  At most, Seagen urges that its claim is "a quintessential quiet title claim," Dkt. 11 at 22, and not—as the Arbitrator held—a "quintessentially contractual" claim.  Award at 36-37 ("Seagen's Quiet Title Claim solely arises from Section 3.3.1 of the Collaboration Agreement.").  But this conclusion, which the Arbitrator made after analyzing the contractual provisions and Seagen's Amended

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 9

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    Demand, *see* Award at 37-38, is one that a court cannot disturb. *See Bosack*, 586 F.3d at 1104 (a

2    court is "prohibited" from "review[ing an arbitral] panel's factual findings and legal conclusions").

3         The crux of Seagen's argument is its assertion that under Washington law there is no statute

4    of limitations for quiet title claims. Dkt. 11 at 21. But the Arbitrator expressly rejected that

5    argument. *See* Award at 37 (quoting *Aberdeen*, 58 Wash. App. at 776, and citing *Bradbury*, 95

6    Wash. at 672). Seagen ignores the authority the Arbitrator relied on and instead cites several

7    Washington appellate court decisions and an unreported order by another court in this District for

8    the proposition that the existence of a contract relating to the property at issue does not change the

9    nature of a quiet title claim. Dkt. 11 at 22. But these decisions cannot countermand the

10   Washington Supreme Court ruling on which the Arbitrator based his legal conclusion, especially

11   where the contract governs the very existence of the underlying property right. And even if

12   subsequent case law cast some doubt on whether *Bradbury* remains controlling authority, it was

13   the Arbitrator's purview to determine the applicable state law. That is exactly what the

14   Arbitrator—an experienced former federal judge familiar with the task of ascertaining applicable

15   state law—did here. Tellingly, Seagen ignores the Arbitrator's separate analysis that rejects

16   Seagen's "alternate assertion … that federal law forecloses application of Washington State's

17   statute of limitations" to Seagen's causes of action. Award at 38 n.9. The Arbitrator's analysis

18   plainly shows he determined under Washington law that a statute of limitations applies to Seagen's

19   quiet title claim. Seagen misleads when it tells this Court otherwise.

20        Seagen argues that the Arbitrator's interpretation of Section 3.3.1 "'fails to draw its essence

21   from the agreement.'" Dkt. 11 at 22 (quoting *Aspic Engineering v. ECC Centcom Constructors

22   LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019)). Seagen accuses the Arbitrator of "disregarding" the

23   "hereby assigns" language in Section 3.3.1. Dkt. 11 at 23. In reality, the Arbitrator *specifically

24   considered* the "hereby assigns" language of that section of the contract. *See* Award at 27. The

25   Arbitrator did not "disregard" contractual language he considered earlier in the Award; rather, he

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 10

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

ruled against Seagen's argument based on that language. The Award expressly finds that Seagen *does not* own DSC's technology, *see* Award at 45; consequently, there was no property for DSC to "hereby assign" in the first place.

Seagen also argues that the Arbitrator's April 2021 order renders the Award "completely irrational" because the Arbitrator's acceptance of the statute of limitations defense in the Award somehow constitutes a "reversal" from that prior order. Dkt. 11 at 24. But the April 2021 order denied DSC's *request to file* a dispositive motion on the statute of limitations. The Arbitrator's ruling was without prejudice to DSC making the same arguments in the course of the arbitral hearing; indeed, the Arbitrator expressly "reserve[d] decision" on that issue "pending development of the evidentiary record in conjunction with the Arbitration Hearing." Dkt. 13, Ex. 11 at 2. Under Seagen's contorted logic, a federal court that refuses to grant leave to file a potentially dispositive motion because the court deems the issue better suited for decision at trial behaves "completely irrationally" if the court later accepts the same argument at a bench trial or on post-trial motions.

### 2. Seagen Impermissibly Asks the Court to Disregard the Arbitrator's Factual Findings and Legal Conclusions

The Arbitrator found that Seagen's quiet title claim also fails on the merits. Section 3.3.1 of the Agreement provides that Seagen may only be assigned technology that constitutes an "Improvement that relates to the Drug Conjugation Technology." Award at 22. Any DSC technology that falls outside of those contractual parameters is not assignable to Seagen. Based on the entirety of the evidence that the Parties presented, the Arbitrator found DSC's technology is not subject to assignment to Seagen. The Award explained:

> *For these reasons*, the Arbitrator concludes that DS-8201 does not meet the definition of "Drug Conjugation Technology" under Section 1.1.17 of the Collaboration Agreement. Because it does not, the Arbitrator concludes that Seagen has failed to carry its burden of providing that the so-called "Improvement IP" reflects an "Improvement that relates to the Drug Conjugation Technology" under Section 3.1.1. of the Collaboration Agreement.

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**– Page 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   Award at 45 (emphasis added).  Seagen is not entitled to quiet title on property to which it has no

2   rights.

3          Disregarding well-established law, *see supra* Section IV.A, Seagen launches a series of

4   scattershot attacks seeking to overturn the Award's factual findings and legal conclusions.  Seagen

5   argues the Arbitrator's finding that DSC's technology is not "relate[d] to Drug Conjugation

6   Technology" disregarded the Agreement's "express language" and ignored two subsections of

7   Section 1.1.17.  Dkt. 11 at 13-15.  Seagen's argument rests upon the groundless assertion that the

8   Arbitrator incorrectly interpreted the term "an Improvement that relates to Drug Conjugation

9   Technology" and impermissibly invites this Court to re-weigh evidence Seagen presented to the

10  Arbitrator that he already correctly rejected.  Seagen is not entitled to a "do-over" merely because

11  it disagrees with the Arbitrator's interpretation and application of contested contract language.

12         Seagen contends that the Arbitrator "simply ignores subpart (c)" and "disregards

13  subpart (b)" of the Drug Conjugation Technology definition.  Dkt. 11 at 13-15.  In truth, the

14  Arbitrator initiated his analysis by carefully considering the definitional provision *in its entirety*.

15  He began by quoting the entire contractual definition of this term:

16         "**Drug Conjugation Technology**" means (a) cytotoxins or cytostatic compounds
           such as monomethyl Auristatin E and monomethyl Auristatin F and certain
17         variants, derivatives, analogues and salts thereof, and methods of making and using
           such cytotoxic or cytostatic compounds (b) compositions and methods useful for
18         attaching the foregoing cytotoxic or cytostatic compounds to antibodies and (c) any
           related assays and methods SGI provides to Licensee pursuant to the Research
19         Program.

20  Award at 23 (quoting Dkt. 12, Ex. 1, § 1.1.17); *see also* Award at 40 (quoting the same definition

21  and explaining that the Award considered the term as "*defined*") (emphasis added).  Contrary to

22  Seagen's assertion, the Arbitrator did not "ignore" or "disregard" any subpart of the Drug

23  Conjugation Technology definition; in fact, he considered the entire contractual provision in light

24  of the entirety of the evidence that the Parties presented to him.  Award at 39-44 (citing record and

25

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT**– Page 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    cases).  As Seagen effectively admits, its arguments boil down to mere disagreement with the

2    Arbitrator's *interpretation* of the entire provision.  *See* Dkt. 11 at 11 ("The Award also finds as a

3    matter of contract interpretation that DSC's parallel ADC program did not reflect an 'Improvement

4    that relates to the Drug Conjugation Technology.'").  Again, this is not a basis for vacatur.  *Oxford*

5    *Health*, 569 U.S. at 569 ("[A]n arbitral decision 'even arguably construing or applying the

6    contract' must stand, regardless of a court's view of its (de)merits.") (citation omitted).

7         While the Award delves into a deeper discussion of certain aspects of the definition,

8    including language used in subsection (a), this analysis reflects the attention necessary for the

9    construction of the contractual term at issue, not any "disregard" of the definition's other

10   subsections.  As the text of section 1.1.17 of the Agreement makes plain, subsection (a) is the

11   predicate section for subsections (b) and (c).  Subsection (b) references "the foregoing cytotoxic

12   or cytostatic compounds" of subsection (a), and subsection (c) likewise references "related" assays

13   and methods.  *See* Award at 23, 40.  Accordingly, the Award's analysis of the relevant scope of

14   Drug Conjugation Technology, and the specific contractual language and technology extensively

15   addressed and contested by the Parties and their experts, is applicable to all subparts of that term's

16   definition.  *See* Award at 40-41 (discussing evidence from DSC's expert Dr. King regarding DSC's

17   unique linker, which is different from those used in Seagen's auristatin-based technology); *see*

18   *also* Award at 44 & n.11 (crediting testimony from DSC's expert Dr. Lambert on the technology

19   as a whole).

20        Seagen's other attacks on the Arbitrator's interpretation of the term "Drug Conjugation

21   Technology" are equally meritless.  *First*, Seagen complains that its dictionary evidence and cited

22   precedent should have resulted in a different conclusion.  Dkt. 11 at 15.  But, as the Award makes

23   plain, the Arbitrator weighed Seagen's proffered evidence and rejected Seagen's argument in a

24   finding that was entirely in line with both Supreme Court and Washington law.  *See* Award at 20;

25   Award at 42 (discussing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)).  The

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT – Page 13

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   Arbitrator explained that the listed cytotoxins "*exemplified*" the scope of the contractual term.

2   Award at 43 (emphasis added); *see also Campbell*, 510 U.S. at 577 (a term "such as"

3   "indicate[s] … illustrative … examples") (internal quotation marks omitted).

4       *Second*, Seagen confusingly asserts that the Award's contract interpretation renders

5   superfluous the reference to "cytostatic" in the term "Drug Conjugation Technology."  Dkt. 11

6   at 15.  But the Arbitrator's holding was premised on an interpretation supported by the expert

7   reports and testimony of DSC's experts, Drs. John M. Lambert and H. Dalton King.  Award at 41.

8   As DSC and its experts explained, and as the Arbitrator observed, Seagen's proposed interpretation

9   would have rendered the clause as a whole substantively meaningless, and therefore superfluous.

10  Award at 42-43.  Seagen's arguments constitute an impermissible attack on the Arbitrator's factual

11  findings.  *Coutee*, 336 F.3d at 1134; *Bosack*, 586 F.3d at 1104.

12      *Third*, Seagen asserts that the Arbitrator's interpretation "failed to address the significant

13  negotiation history evidence" between the parties.  Dkt. 11 at 16.  That, again, is incorrect.  The

14  Arbitrator weighed *all* the evidence, including the Parties' negotiation history, to construe the term

15  "such as" in the most objectively reasonable manner.  *See* Award at 41 n.10 (explaining that the

16  Arbitrator made his findings "in the context of the entire (voluminous) evidentiary record"

17  developed in the Arbitration); Award at 20 (explaining that the Award "concisely recites only those

18  facts and discusses only those legal arguments that the Arbitrator considers necessary to establish

19  the basis for resolution").  Courts routinely reject arguments that an arbitrator failed to consider

20  relevant evidence where the arbitrator assured that "his opinion was '[b]ased on the evidence

21  presented during the arbitration hearings.'"  *Olson v. Harland Clarke Corp.*, No. C11-5585 BHS,

22  2014 WL 2589453, at *2 (W.D. Wash. June 10, 2014), *aff'd*, 676 F. Appx. 635 (9th Cir. 2017).

23  Moreover, the record evidence clearly discussed the Parties' views regarding the negotiation

24  history; the very exhibits that Seagen submitted alongside its Petition reflect that discussion.  *See,*

25  *e.g.*, Dkt. 12, Ex. 9 at 26.

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT**– Page 14

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1     Based on his examination of Washington law of contract interpretation, the Arbitrator was

2 "persuaded that the most reasonable meaning of the term 'such as' in the defined term 'Drug

3 Conjugation Technology' is to limit the scope of the definition to the actual boundaries of Seagen's

4 ADC technology that is the subject of the Collaboration Agreement."  Award at 42-43.  There is

5 nothing "irrational" about this conclusion, nor does it exhibit a "manifest disregard of the law."

6 To the contrary, as the Arbitrator stated, this contractual interpretation

> comports with Washington State law in at least three critical respects: (1) it
> effectuates the objective manifestation theory of contract interpretation; (2) it
> favors an interpretation that gives substantive effect to the "such as" clause, versus
> Seagen's proposed interpretation that would render that clause substantively
> meaningless, and therefore superfluous; and (3) it favors DSC's more objectively
> reasonable interpretation of the "such as" clause – namely, that the Parties
> commonsensically intended to tether the scope of the term "Drug Conjugation
> Technology" to the type of ADC technology that Seagen actually possessed.

Award at 43.

13     Seagen's argument that the Award is completely irrational and exhibits manifest disregard

14 of the law because the Arbitrator purportedly allowed his "views about reasonableness to trump

15 the plain terms of the Collaboration Agreement" (Dkt. 11 at 16-21) lacks merit.  Seagen asserts

16 that "[t]he Arbitrator decided what was 'commonsensically intended' and commercially

17 reasonable and used that to drive the determination of the scope of 'Drug Conjugation

18 Technology,' over the express words of the Collaboration Agreement."  Dkt. 11 at 16.  Seagen's

19 claim is another impermissible invitation for this Court to second-guess the Arbitrator's weighing

20 of the evidence.

21     The Arbitrator accorded more weight to DSC's evidence and interpretation than to

22 Seagen's because "it defies credulity to suggest that DSC—a sophisticated international

23 pharmaceutical company—would intentionally agree to assign Seagen 'any right, title and interest'

24 in a potential future drug that utilizes DX-8951, a proprietary cytotoxin that it had already

25

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT**– Page 15

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

developed at the time the Collaboration Agreement was executed."  Award at 43.  The Arbitrator reached this factual conclusion after careful consideration of both Parties' extensive evidence, including expert testimony.  *See* Award at 40-44.  There is no basis to support Seagen's cynical assertion that the Arbitrator "worked backwards" to impose his preferred contract interpretation and disregarded relevant evidence.  Dkt. 11 at 17.

Seagen's reliance on *Aspic* (*see* Dkt. 11 at 17, 22) is unavailing.  In *Aspic*, the arbitrator held that requiring a party to meet certain "strict" provisions of a contract incorporating governmental regulations would result in "unfairness."  913 F.3d at 1166-68.  To prevent what he deemed to be an unfair result, the arbitrator in that case "disregarded specific provisions of the plain text" of the contracts and issued an award that directly conflicted with the contracts' governmental regulation-related provisions.  *Id.*  The Arbitrator here did nothing of the sort.  He made no mention of "fairness," and carefully analyzed each of the dispositive contractual provisions at issue in this Arbitration, much less failed to give weight to applicable governmental regulations, as was the case in *Aspic*.  Award at 40-45.  "[T]he courts have no business overruling [the arbitrator] because their interpretation of the contract is different from his.  The arbitrator's construction holds, however good, bad, or ugly."  *Oxford Health*, 569 U.S. at 573 (internal quotation marks and citation omitted).[5]

Seagen's argument that the Arbitrator "misapplie[d] Washington State law" in reaching his conclusion is likewise meritless.  Dkt. 11 at 18.  The Arbitrator expressly recognized that Washington law adopts "'the "objective manifestation" theory of contract interpretation focusing on the reasonable meaning of the contract language to determine the parties' intent.'"  Award at 42 (quoting *RSD AAP, LLC v. Alyeska Ocean, Inc.*, 190 Wash. App. 305, 314 (2015)).  The Arbitrator then applied this law to confirm that his construction of "Drug Conjugation Technology"

---

[5] Indeed, Seagen concedes that the Arbitrator "interpreted" the Agreement.  Dkt. 11 at 17.  Seagen merely argues that the Award's "contract interpretation" was incorrect.  But that is not a permissible ground for vacatur.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 16

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   "effectuates the objective manifestation theory of contract interpretation."  Award at 43-44.  In

2   any event, "mere error in law" is not a basis to vacate an arbitral award under Section 10(a)(4).

3   *Collins*, 505 F.3d at 879-80.  The "manifest disregard of the law" doctrine requires that the

4   Arbitrator "recognized the applicable law and then ignored it."  *Id.* at 879.

5          The Arbitrator found that DSC's technology does not meet the definition of "Drug

6   Conjugation Technology" based on his evaluation of (among other things) the Rebuttal Expert

7   Report of Dr. H. Dalton King, the testimony of Dr. Carolyn Bertozzi, the Opening Expert Report

8   and testimony of Dr. John M. Lambert, and documentary evidence.  *See* Award at 40-44.  The

9   Award states that the findings were made "in the context of the entire (voluminous) evidentiary

10  record developed in conjunction with the Arbitration Hearing and the Reopened Arbitration

11  Hearing," Award at 41 n.10, and that the Arbitrator "accorded greater weight" to DSC's expert

12  witness (Dr. Lambert) over Seagen's witnesses, Award at 44 n.11.  These reasons foreclose

13  vacatur.  *See Bosack*, 586 F.3d at 1105; *Kyocera*, 341 F.3d at 994; *Coutee*, 336 F.3d at 1134.

14         Seagen complains that the Arbitrator did not discuss certain evidence that it adduced in its

15  failed effort to prove liability.  Dkt. 11 at 11.  The Arbitrator was not obligated to specifically

16  address each and every item of evidence Seagen raised during the two-year Arbitration.  *See Olson*,

17  2014 WL 2589453, at *2.  Seagen's argument rings hollow in view of the Arbitrator's precise

18  explanation that, for reasons of "efficiency and economy," he "recite[d] only those facts and

19  discusse[d] only those legal arguments … necessary to establish the basis for resolution of the

20  Parties' claims, defenses, and requests for relief."  Award at 20.  Whether DSC's technology meets

21  the definition of "Drug Conjugation Technology" and thus constitutes "an Improvement that

22  relates to the Drug Conjugation Technology" was "*strongly contested*" throughout the Arbitration.

23  Award at 41 n.10 (emphasis added).  Resolving this issue required the Arbitrator to make

24  credibility determinations and to weigh evidence—findings that a court is prohibited from second-

25  guessing on judicial review.  *Bosack*, 586 F.3d at 1105.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 17

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

In sum, Seagen's argument centers on the claim that the Arbitrator got it wrong, and a misrepresentation of the Arbitrator's factual findings and legal conclusions.  This is a bad-faith attempt to re-litigate a "strongly contested" Arbitration.  *See* Award at 41 n.10; *Pharmangiaga Berhad v. E*HealthLine.com*, 344 F.Supp.3d 1136, 1146 (E.D. Cal. 2018) (awarding fees incurred in enforcing an award where the "principal arguments" for vacatur were "disputes with the [arbitrator's] credibility determinations and weighing of the evidence").

### 3.   Seagen Fails to Acknowledge the Arbitrator's Factual Finding that DSC's Technology Does Not Even Meet the First Eligibility Criterion for Assignable Technology Under the Parties' Agreement

Seagen fails to acknowledge that DSC's technology is not assignable to Seagen because the Arbitrator made the factual finding that DSC's technology does not meet the first requirement to be assignable—*i.e.*, it is not an "Improvement" under the Agreement.  *See* Award at 45 n.12.  Seagen's quiet title claim therefore also fails for this independent reason, as Seagen is not entitled to property to which it has no rights.  Seagen's silence on the Arbitrator's separate and independently-dispositive finding, in which he expressly rejected a necessary factual threshold for Seagen's claims, further shows that Seagen filed its Petition in bad faith.

As discussed above (and as the Award explains), Section 3.3.1 of the Agreement states that Seagen may only be assigned technology that is an "Improvement that relates to the Drug Conjugation Technology."  Award at 22.  The threshold requirement for that assignment—an "Improvement"—is defined in Section 1.1.32:

> "**Improvements**" means all patentable or non-patentable inventions, discoveries or other know-how developed and Controlled by either Party after the Effective Date that utilize, incorporate, derive directly from, directly relate to, are made using or are based directly on the SGI Technology … .

Award at 23 (quoting Dkt. 12, Ex. 1, § 1.1.32).[6]

---

[6] Seagen acknowledges that any assignable IP must meet each of the separate requirements of being an "(1) 'Improvement' that (2) 'relates to the Drug Conjugation Technology.'" Dkt. 11 at 7.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 18

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1       As the Award explains, "for completeness" of analysis, Seagen failed to prove that DSC's

2   technology reasonably meets the definition of the term "Improvements" in Section 1.1.32 of the

3   Agreement because DSC's technology that Seagen alleged to be "Improvement IP" does not

4   "utilize, incorporate, derive directly from, directly relate to, … made using or … based directly on

5   the SGI Technology." Award at 45 n.12.  The Arbitrator stated that this predicate requirement is

6   a wholly separate finding, even though it is based on the same overall underlying evidence. *Id.*

7   This finding was made in the context of the entire evidentiary record, including extensive fact and

8   expert testimony, and is one that a court is not authorized to second-guess. *See supra* Section

9   IV.A).  Seagen's Petition lacks *any mention* of the Award's discussion of this predicate factual

10  finding.    Instead, in disregard of the Arbitrator's finding, Seagen claims it "presented

11  overwhelming evidence" that DSC's technology was an "Improvement." Dkt. 11 at 7.  But the

12  Arbitrator explicitly rejected Seagen's assertions after considering the evidence.  Award at 45 n.12.

13  This is fatal to Seagen's Petition.

14      Seagen also asserts that the Arbitrator made no findings as to Seagen's alleged evidence

15  that DSC "used and incorporated Seagen's proprietary linker architecture." Dkt. 11 at 11.  Seagen

16  is incorrect.  The Arbitrator credited Dr. Lambert's testimony, essentially unchallenged during

17  cross-examination, that Seagen's contemporaneous documents reflected that DSC's technology

18  was *not* "plausibly related to or arose from Seagen's ADC technology, either generally or with

19  respect to the Collaboration Agreement." Award at 44.  The Arbitrator's factual finding as to the

20  "Improvement" requirement provides an independent ground supporting the Award. *See Protech*

21  *Minerals, Inc. v. Suzuki*, No. 2:20-cv-00969-TSZ, 2020 WL 6939637, at *2 (W.D. Wash. Nov. 25,

22  2020).  The Court can deny Seagen's Petition on this basis alone. *See Sea Shipping Inc. v. Half*

23  *Moon Shipping, LLC*, 848 F. Supp. 2d 448, 455 (S.D.N.Y. 2012).[7]

---

[7] To the extent Seagen attempts to explain away the Arbitrator's finding in its reply brief, Seagen is precluded from doing so. *Camarata v. McDonald's Corp.*, No. C19-6236JLR, 2021 WL 1893753, at *3 (W.D. Wash. May 11, 2021) (citing cases).

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 19

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**C.**     **Seagen's Petition to Vacate Should Also Be Dismissed As Untimely**

Under 9 U.S.C. § 12, Seagen was required to serve its Petition within three months after the Award was delivered.  Courts in this Circuit have strictly construed this requirement.  *See, e.g.*, *IKON Global Mkts., Inc. v. Appert*, No. C11-cv-53RAJ, 2011WL 9687842, at *3 (W.D. Wash. July 28, 2011) ("interpret[ing] Section 12 in accordance with its plain meaning" and requiring service of a petition to vacate within three months); *see also Webster v. A.T. Kearney, Inc.*, 507 F.3d 568, 570, 573 (7th Cir. 2007) (motion to vacate was untimely where not *served* within three months).

The three-month deadline for Seagen to serve its Petition on DSC expired on November 14, 2022.  *Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1252 (9th Cir. 2018).  Seagen had not obtained a summons by that time, let alone served DSC with its Petition.  *See* Dkt 21 (summons issued on November 15, 2022).  Nevertheless, Seagen filed a purported "proof of service," claiming to have served DSC on November 10, 2022 by sending: (1) a fax of its Petition to DSC's R&D Planning Department (addressed to a former employee); (2) a fax of its Petition to DSC's counsel of record in the Arbitration; and (3) an email attaching its Petition to DSC's counsel of record in the Arbitration.  Dkt. 37, at 2.  Section 12 of the FAA, however, does not authorize service of a petition to vacate by fax or email.[8]  Even construing this fax and/or email as an attempt at "alternative service" under Federal Rule of Civil Procedure 4(f)(3), prior Court approval would have been required, *see Brockmeyer v. May*, 383 F.3d 798, 805-06 (9th Cir. 2004), which Seagen did not seek.  Moreover, "actual notice" of a petition "is not sufficient to cure defectively executed service."  *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).[9]

---

[8] 9 U.S.C. § 12 does not prescribe any procedure for serving entities, like DSC, that are not a resident in any U.S. judicial district.  Courts in other circuits have permitted service on nonresident parties in compliance with Federal Rule of Civil Procedure 4.  *See, e.g.*, *Technologists, Inc. v. MIR's Ltd.*, 725 F. Supp. 2d 120, 126-127 (D.D.C. 2010).

[9] S*ee also Belz v. Morgan Stanley Smith Barney, LLC*, No. 3:13-cv-636-J-34 MCR, 2014 WL 897048, at *7 n.9 (M.D. Fla. Mar. 5, 2014) (refusing to treat "actual notice" of a vacatur motion as "a sufficient basis for finding an exception to the FAA's requirements"); *Ballantine v. Dominican Republic*, No. 19-cv-3598 (TJK), 2020 WL 4597159, at *4

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 20

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Seagen contends that it was not required to serve its Petition according to Section 12 of the FAA (or Federal Rule of Civil Procedure 4).  Dkt. 51 at 3.  In support, Seagen points to an unreported out-of-circuit district court decision, *Aperion Care, Inc. v. Senwell Senior Inv. Advisors*, No. 22 C 3120, 2022 WL 10505696 (N.D. Ill. Oct. 17, 2022).  That case found email service of a vacatur motion proper (*id.* at *2) because the parties had agreed to that type of service under Rule R-43(b) of the AAA Commercial Arbitration Rules, which permits email service for "the notices required by these rules," provided the parties and the arbitrator agree to that service.  AAA Commercial Arbitration Rules, R-43(b).  But other courts—circuit courts and district courts alike—have rejected this argument.[10]  *Aperion* overlooked that the AAA Commercial Arbitration Rules have a separate provision that requires service *by mail* for "[a]ny *papers, notices, or process necessary or proper* for the initiation or continuation of an arbitration under these rules, *for any court action in connection therewith*." AAA Commercial Arbitration Rules, R-43(a) (emphasis added.)  Rule R-43(a) is the only provision that might apply to serving a notice or other process to initiate a vacatur action in federal court—and it requires service by mail.  Seagen's Petition is therefore untimely.

---

(D.D.C. Aug. 11, 2020) (treating "actual notice" as sufficient "would eviscerate the FAA's language in Section 12") (citations omitted).

[10] *See, e.g.*, *Dalla-Longa v. Magnetar Cap. LLC*, 33 F.4th 693, 696 (2d Cir. 2022) (rejecting the argument that "agreement to accept papers by email in the arbitration proceedings extends to service of motion papers in the district court to vacate the arbitration award"); *O'Neal Constructors, LLC v. DRT Am., LLC*, 991 F.3d 1376, 1378-81 (11th Cir. 2021) (email service of a courtesy copy of a memorandum in support of a motion to vacate does not constitute "the required service … under 9 U.S.C. § 12" where "the party to be served did not expressly consent in writing to service by email"); *Shaut v. Hatch*, No. 1:18-cv-420, 2018 WL 3559081, at *3 (N.D. Ohio July 24, 2018) (email service insufficient even where "email service was used in the underlying arbitration"); *Benedict v. Amgen USA Inc.*, No. 1:19-cv-113, 2019 WL 1597007, at *3 (N.D. Ohio Apr. 15, 2019) ("service by email would be a deviation from [Federal Rule of Civil Procedure 4]").

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT– Page 21

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## V.   SEAGEN'S BAD FAITH PETITION JUSTIFIES AWARDING DSC ITS COSTS AND ATTORNEYS' FEES

Seagen's Petition presents a rare instance where awarding both costs and attorneys' fees is appropriate and warranted because Seagen's vacatur challenge is sanctionable on multiple grounds.  Federal courts have inherent authority to award attorneys' fees in judicial proceedings arising from an arbitral award where "the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."  *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.*, 665 F.3d 1091, 1104 (9th Cir. 2011).[11]  This power derives from a court's inherent authority to deter bad faith litigation tactics.  *Id.*[12]

This Court should exercise that inherent authority here and award DSC its costs and attorneys' fees because Seagen's cynical attacks on the Award go beyond legitimate advocacy. *First*, as discussed in detail in Section IV.B.3 above, the Arbitrator expressly found that DSC's technology was not an "Improvement."  Award at 45 n.12.  Yet Seagen filed its Petition anyway, repeatedly calling DSC's Technology "Improvement IP," apparently hoping to evade the Award's factual predicate through silence about the fact that the Arbitrator rejected Seagen's use of this specific verbiage.[13]  This is bad faith litigation.

*Second*, Seagen is—or should be—well aware that "[u]nder § 10(a)(4), the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all."  *Oxford Health*, 569 U.S. at 573; *see also Lagstein v. Certain Underwriters at*

---

[11] Other circuits agree.  *See, e.g.*, *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006), *abrogated on other grounds by Frazier v. CitiFinancial Corp.*, 604 F.3d 1313 (11th Cir. 2010) ("[I]f a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions."); *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1154 (10th Cir. 2007).

[12] An award of DSC's costs and attorneys' fees is also warranted because Seagen consented to a provision that entitles the prevailing party to its "costs of arbitration, reasonable attorneys' fees and reasonable costs for expert and other witnesses" in the Arbitration. Dkt. 12, Ex. 1, § 19.3.4.  *See Protech Minerals*, 2020 WL 6939637, at *3 (awarding fees because "[t]he Agreement provides that the prevailing party in an action shall recover their costs and attorney fees").  Seagen's Petition is a mere continuation of its effort to re-litigate what it lost in the Arbitration.

[13] The Arbitrator showed his disagreement with Seagen's characterization by repeatedly using instead the phrase "the so-called 'Improvement IP'" in discussing Seagen's allegations.  *See* Award at 35, 39, 40.

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT – Page 22

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    *Lloyd's, London*, 607 F.3d 634, 640-41 (9th Cir. 2010) (Section 10 "does not sanction judicial

2    review of the merits, and whether or not the panel's findings are supported by the evidence in the

3    record is beyond the scope of our review") (internal quotation marks and citation omitted).  Yet

4    Seagen never cites *Oxford Health* and repeatedly asks this Court to do what *Oxford Health*

5    forbids—vacate the Award based on the alleged merits of the Arbitrator's contract construction.

6    *See, e.g.*, Dkt. 11 at 2, 15 (claiming the Arbitrator missed "undisputed facts" and "undisputed

7    evidence" favorable to Seagen).  Seagen's *66 exhibits* in putative support of its Petition abundantly

8    illustrate its prohibited attempt to "rerun the matter in a court."  *Oxford Health*, 569 U.S. at 573.

9    Seagen's Petition reflects a careless disregard of controlling precedent.[14]  This, too, warrants

10   sanctions.  *See SSA Terminals v. Machinists Auto. Trades Dist. Lodge No. 190*, 244 F. Supp. 2d

11   1031, 1040 (N.D. Cal. 2003) (awarding attorneys' fees where the court found the vacatur challenge

12   "to be nothing more than a disagreement with the Arbitrator's findings on the merits of the case,"

13   which was "frivolous because it [was] destined to fail").

14          *Third*, Seagen's primary arguments constitute nothing more than attacks on the Arbitrator's

15   weighing of the evidence,[15] his credibility determinations,[16] and his alleged erroneous

16   interpretation of the Agreement.[17]  In *Pharmangiaga*, for example, the district court awarded fees

---

[14] Seagen's requested relief (a rehearing "before a new arbitrator," *see* Dkt. 1 at 6 and Dkt. 11 at 24), is contrary to established Supreme Court precedent on this issue, as well.  *See Stolt-Nielsen*, 559 U.S. at 677 (if a court vacates an award under 9 U.S.C. § 10, that court "must either 'direct a rehearing by the arbitrators' or decide the question originally referred to the panel").

[15] *See, e.g.*, Dkt. 11 at 15 (claiming that the Award did not account for "Seagen's powerful evidentiary showing").

[16] *Compare* Dkt. 11 at 4-6 (extensively citing the Bertozzi Report), *with* Award at 44 n.11 ("to the extent that Dr. Bertozzi or any other Seagen witness has offered disparate testimony and/or opinions with respect to each of the aforementioned points, the Arbitrator has accorded greater weight to the testimony and opinions of Dr. Lambert").

[17] *Compare* Dkt. 11 at 1 ("Seagen showed that the DSC technology met all three subparts [of the Drug Conjugation Technology definition] with evidence from DSC's own patents and publications"), *with* Award at 45 ("For these reasons [*i.e.*, pages 38-44 of the Award], the Arbitrator concludes that DS-8201 does not meet the definition of 'Drug Conjugation Technology' under Section 1.1.17 of the Collaboration Agreement."); *see also* Dkt. 11 at 11 (arguing that the Award's "contract interpretation" was wrong); *id.* at 15 (attacking the Arbitrator's "interpretation of subpart (a)" of the Drug Conjugation Technology definition).  Challenging the Arbitrator's contract interpretation is itself sanctionable.  *See, e.g.*, *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 254 (7th Cir. 1986).

DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION
TO SEAGEN INC.'S PETITION TO VACATE
ARBITRATION AWARD AND MEMORANDUM IN
SUPPORT– Page 23

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

in part because the petitioner's "principal arguments" for vacatur were disputes with the arbitrator's credibility determinations and weighing of the evidence.  *See* 344 F.Supp.3d at 1146. Seagen's positions here are similarly sanctionable because they lie "outside the scope of judicial review" under the FAA.  *Id.*; *see also SSA Terminals*, 244 F. Supp. 2d at 1040 (awarding attorneys' fees where "the Arbitrator's 35-page Award more than adequately addresses all the arguments Petitioner has raised its motion [and a] careful reading of the Award should have convinced Petitioner of the futility of moving this court to vacate the Award"); *cf. Purus Plastics GmbH v. Eco-Terr Distrib., Inc.*, No. C18-0277, 2018 WL 3064817, at \*11 (W.D. Wash. June 21, 2018) (awarding prejudgment interest where "much of Eco-Terr's motion attempts to relitigate issues before the arbitration panel").

*Fourth*, Seagen repeatedly misrepresents the Award.  For example, Seagen makes the hyperbolic assertion that the Award "does not address any of the compelling evidence Seagen presented to show liability." Dkt. 11 at 11.  The Award expressly states—multiple times—that *all* of Seagen's evidence was considered. [18]   Seagen's gross misrepresentation of the Award compounds the vexatiousness of Seagen's Petition.  While "[c]ourts cannot prevent parties from trying to convert arbitration losses into court victories," they "can and should insist that if a party on the short end of an arbitration award attacks that award in court without any real legal basis for doing so, that party should pay sanctions."  *Hercules Steel*, 441 F.3d at 913.[19]

## VI.   CONCLUSION

This Court should deny Seagen's Petition and award DSC its costs and attorneys' fees.

---

[18] *See, e.g.*, Award at 20 ("[f]or efficiency and economy, this Interim Award concisely recites only those facts and discusses only those legal arguments that the Arbitrator considers necessary to establish the basis for resolution of the Parties' claims, defenses, and requests for relief"); Award at 41 n.10 (observing that the Arbitrator's findings of fact were in view of "the entire (voluminous) evidentiary record").

[19] DSC requests the right to file an appropriate motion quantifying its costs and fees if this Court awards them to DSC. *See* Fed. R. Civ. P. 54(d)(2)(B).

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT** – Page 24

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   DATED:  January 19, 2023

2                                           CORR CRONIN LLP

3                                           */s/ Jack Lovejoy*
4                                           Steven W. Fogg
                                            WSBA No. 23528
5                                           sfogg@corrcronin.com
                                            Jack M. Lovejoy
6                                           WSBA No. 36962
7                                           jlovejoy@corrcronin.com
                                            CORR CRONIN LLP
8                                           1015 Second Avenue, Floor 10
                                            Seattle, Washington 98104-1001
9                                           Telephone:  (206) 625-8600
                                            Fax:  (206) 625-0900
10
11                                          OF COUNSEL:

12                                          Preston K. Ratliff II
                                            prestonratliff@paulhastings.com
13                                          Dana Weir
                                            danaweir@paulhastings.com
14                                          Amanda L. Pober
                                            amandapober@paulhastings.com
15                                          PAUL HASTINGS LLP
16                                          200 Park Avenue
                                            New York, New York 10166
17                                          Telephone:  (212) 318-6000

18                                          Joseph R. Profaizer
19                                          joeprofaizer@paulhastings.com
                                            Igor V. Timofeyev
20                                          igortimofeyev@paulhastings.com
                                            PAUL HASTINGS LLP
21                                          2050 M Street NW
                                            Washington, DC 20036
22                                          Telephone:  (202) 551-1700

23                                          *Attorneys for Respondent*
24                                          *Daiichi Sankyo Company, Limited*

25

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT**– Page 25

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that on January 19, 2023, I caused the foregoing document to be

3  electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4  notification of such filing to all counsel of record.

5

6

                                    *s/ Wen L. Cruz*
7                                   Wen L. Cruz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DAIICHI SANKYO COMPANY, LIMITED'S OPPOSITION TO SEAGEN INC.'S PETITION TO VACATE ARBITRATION AWARD AND MEMORANDUM IN SUPPORT** – Page 26

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900