THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

SEAGEN INC.,

               Petitioner,

    v.

DAIICHI SANKYO CO., LTD.,

               Respondent.

Case No. 2:22-cv-01613-JLR

**PETITIONER SEAGEN INC.'S REPLY IN SUPPORT OF PETITION TO VACATE ARBITRATION AWARD**

**NOTE ON MOTION CALENDAR:**
**February 10, 2023**

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ........................................................................................... 1

II.     DSC CANNOT JUSTIFY THE ARBITRATOR'S STATUTE OF
        LIMITATIONS DECISION ........................................................................... 1

III.    THE AWARD'S CONTRACT INTERPRETATION IS COMPLETELY
        IRRATIONAL AND IN MANIFEST DISREGARD OF THE LAW ............................. 2

        A.      The Award Is Completely Irrational and Exhibits Manifest Disregard for
                the Law in Its Interpretation of "Drug Conjugation Technology"......................... 2

        B.      The Award Does Not Include an "Independent Third Ground" As DSC
                Contends ...................................................................................... 5

IV.     SEAGEN'S PETITION TO VACATE IS NOT TIME-BARRED .................................. 6

        A.      Seagen Timely Served DSC by Email and Facsimile on November 10,
                2022.......................................................................................... 6

        B.      Because the Interim Award Was Not Final, the Time to Serve Has Not
                Begun ........................................................................................ 9

V.      DSC'S REQUEST FOR COSTS AND FEES IS ABSURD ......................................... 10

VI.     CONCLUSION................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aircraft Braking Sys. Corp. v. Loc. 856*,
    97 F.3d 155 (6th Cir. 1996) ....................................................................................11

*Aperion Care, Inc. v. Senwell Senior Inv. Advisors*,
    No. 22 C 3120, 2022 WL 10505696 (N.D. Ill. Oct. 17, 2022) ..........................6, 7

*Aspic Engineering & Construction Co. v. ECC Centcom Constructors LLC*,
    913 F.3d 1162 (9th Cir. 2019) .............................................................................5, 11

*Benedict v. Amgen USA, Inc.*,
    No. 1:19-cv-113, 2019 WL 1597007 (N.D. Ohio Apr. 15, 2019) ...........................8

*Corinthian Colls., Inc. v. McCague*,
    No. 09 C 4899, 2010 WL 918074 (N.D. Ill. Mar. 4, 2010) ....................................7

*Dalla-Longa v. Magnetar Capital LLC*,
    33 F.4th 693 (2d Cir. 2022) ....................................................................................8

*Day & Zimmerman, Inc. v. SOC-SMG, Inc.*,
    C.A. No. 11-6008, 2012 U.S. Dist. LEXIS 151222 (E.D. Pa. Oct. 22, 2012) .........7

*Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist.
    Council 91*,
    43 F.4th 628 (6th Cir. 2022) ....................................................................................9

*Hyosung (America) Inc. v. Tranax Technologies Inc.*,
    No. C 10- 0793 VRW, 2010 WL 1853764 (N.D. Cal. May 6, 2010)...................10

*IKON Global Markets v. Appert*,
    No. C11-53RAJ, 2011 WL 9687842 (W.D. Wash. July 28, 2011) .........................8

*InterCarbon Bermuda, Ltd. v. Caltrex Trading & Transport Corp.*,
    146 F.R.D. 64 (S.D.N.Y. 1993) ...............................................................................8

*Kent Sch. Dist. No. 415 v. Ladum*,
    728 P.2d 164 (Wash. 1986)......................................................................................1

*Leeward Constr. Co. v. Am. Univ. of Antigua-Coll. of Med.*,
    826 F.3d 634 (2d Cir. 2016) . (*See* Ex. 67; Ex. 68 .) ...............................................3

*McKinney Restoration, Co. v. Ill. Dist. Council No. 1*,
    392 F.3d 867 (7th Cir. 2004) .................................................................................10

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

ii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Michaels v. Mariforum Shipping, S.A.*,
624 F.2d 411 (2d Cir. 1980)..................................................................9

*Millmen Local 550 v. Wells Exterior Trim*,
828 F.2d 1373 (9th Cir. 1987) ..............................................................9

*Ministry of Def. & Support for the Armed Forces v. Cubic Def. Sys., Inc.*,
665 F.3d 1091 (9th Cir. 2011)..............................................................11

*Montes v. Shearson Lehman Bros., Inc.*,
128 F.3d 1456 (11th Cir.1997) .............................................................11

*O'Neal Constructors, LLC v. DRT Am., LLC*,
991 F.3d 1376 (11th Cir. 2021) .............................................................8

*Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*,
935 F.2d 1019 (9th Cir. 1991) ..............................................................10

*Republic of Argentina v. BG Grp. PLC*,
715 F. Supp. 2d 108 (D.D.C. 2010)....................................................8, 9

*Shaut v. Hatch*,
No. 1:18-cv-420, 2018 WL 3559081 (N.D. Ohio July 24, 2018)............8

*Smarter Tools Inc. v. Chongqing SENCI Import & Export Co.*,
No. 18-cv-2714 (AJN), 2019 WL 1349527 (S.D.N.Y. Mar. 26, 2019)....4

*Stolt-Nielsen S.A. v. Animalfeeds International Corp.*,
559 U.S. 662 (2010)............................................................................11

*Swenson v. Bushman Investment Properties, Ltd.*,
870 F.Supp.2d 1049 (D. Idaho 2012) ..................................................10

*In re Trans Chem. Ltd. v. China Nat. Mach. Import & Export Corp.*,
978 F. Supp. 266 (S.D. Tex. 1997) ........................................................8

*TVL Int'l, LLC v. Zhejiang Shenghui Lighting Co.*,
C.A. No. 3:19-CV-393-RJC-DCK, 2021 WL 836875 (W.D.N.C. Feb. 3, 2021)....................7

**Statutes**

9 U.S.C. § 10..........................................................................................11

FAA section 12..........................................................................................8

Foreign Sovereign Immunities Act..............................................................8

**SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR**

iii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

RCW 7.28.310 .................................................................................................................1

4

**Other Authorities**

5

AAA Rule 47(b).............................................................................................................9

6

AAA Rule R-47(b).........................................................................................................9

7

Rule 43 ......................................................................................................................7, 8

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

iv

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## I.   INTRODUCTION

Daiichi Sankyo Co., Ltd. ("DSC")'s opposition is telling.  If the arbitrator had provided a rational basis for his Award, DSC would have cited it.  Instead, throughout its opposition, DSC engages in sleight of hand, claims that the arbitrator did things he never did, and relies on a generic footnote in which the arbitrator claims—in conclusory fashion—to have considered and rejected all of Seagen's arguments.  DSC's misdirection does not remedy the Award's fatal errors and flaws.  As Seagen demonstrated, the Award is completely irrational, manifestly disregards the law, and cannot survive—even with the substantial deference to which it is entitled.

## II.   DSC CANNOT JUSTIFY THE ARBITRATOR'S STATUTE OF LIMITATIONS DECISION

DSC does not dispute that under Washington law "[t]here is no statute of limitations with regard to an action to quiet title." *Kent Sch. Dist. No. 415 v. Ladum*, 728 P.2d 164, 165–66 (Wash. 1986).  The Arbitrator applied one anyway based on his assertion that the "gravamen" of Seagen's claim was a breach of contract—not quiet title.  But that "gravamen" conclusion was completely irrational, and the Arbitrator manifestly disregarded Washington law by finding Seagen's quiet title claim barred.

DSC's opposition fails to address Seagen's showing of irrationality.  The Award's gravamen analysis turned on its conclusion that "Seagen's Quiet Title Claim is nothing more than a request for specific performance of Section 3.3.1" of the Collaboration Agreement.  (Interim Award ("Award") at 37; Seagen's Opening Memorandum ("Memo") at 21-23.)  That finding is irrational and completely at odds with the Arbitrator's other findings.  The Award correctly found that the "hereby assigns" clause "does not reasonably establish an affirmative duty" on either party; "it simply memorializes the Parties' agreement" that such improvements are *automatically and immediately* assigned to Seagen.  (Award at 27; Memo at 22 (emphasis added).)  Because ownership had already transferred, there was no obligation left to specifically enforce.  (Memo at 23.)  Rather, the issue was who owned the technology.  That is a quintessential quiet title claim expressly authorized by Washington law (RCW 7.28.310), not a breach of contract claim.

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

1

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

DSC offers no basis to salvage the Award's irreconcilable findings.  DSC's argument that the Award did not "disregard" the "hereby assigns" clause because the "Award expressly finds that Seagen *does not* own DSC's technology . . . consequently, there was no property for DSC to 'hereby assign' in the first place" is sleight of hand.  (DSC Opposition Brief ("Opp.") at 11 (emphasis in original).)  Whether Seagen is entitled to prevail on the merits is irrelevant to the claim's gravamen.

DSC also wholly fails to respond to Seagen's showing that the Award's gravamen finding irrationally conflicts with the Award's conclusion that the only relevant affirmative duty was DSC's duty to "promptly notify" Seagen of any Improvements.  (Award at 27-27.)  As Seagen showed, the notice obligation has nothing to do with the ultimate question of who owns the Improvement IP.  Assignment occurs automatically and immediately—even before the notice obligation arises.  Compliance with the notice provision does not affect ownership.  Even without a notice provision, Seagen would still have a quiet title claim.  (Memo at 23.)  DSC makes no attempt to explain how the Award could rationally find the quite title claim "entirely reliant upon" an alleged breach of section 3.3.1, when the Award itself found that a duty to notify was the "<u>only</u> affirmative duty that section 3.3.1 of the Collaboration Agreement imposes upon DSC."  (Award at 27 (emphasis in original).)

DSC's failure to address Seagen's arguments is telling.  The Award's application of a non-existent statute of limitations is completely irrational and in manifest disregard of the law, and DSC found no way to defend it.

## III.   THE AWARD'S CONTRACT INTERPRETATION IS COMPLETELY IRRATIONAL AND IN MANIFEST DISREGARD OF THE LAW

### A.   The Award Is Completely Irrational and Exhibits Manifest Disregard for the Law in Its Interpretation of "Drug Conjugation Technology"

Seagen also showed that the Award's merits decision was completely irrational and in manifest disregard of the law.  (Memo at 13-21.)  The Award failed to draw its essence from the Collaboration Agreement because it completely disregarded key components of the "Drug Conjugation Technology" definition.  Although the definition contains three subparts, the Award

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

2

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1    treated it as though subparts (b) and (c) did not exist.  (*Id.* at 13-16.)

2         DSC responds by crediting the Arbitrator with something he never did.  DSC points out

3    that the Award quotes the entire definition and then claims that the Arbitrator "considered the

4    entire contractual provision . . . ."  (Opp. at 12, *citing* Award at 39-44.)  Other than quoting the full

5    definition, however, the cited pages never discuss subparts (b) or (c).  Instead, the Award finds

6    that only subpart (a) is "relevant"—which DSC's brief omits:

7              *As relevant here*, the defined term "Drug Conjugation Technology"
             – which Section 3.3.1 unambiguously establishes must be the basis
8              for any "Improvements" – *means* "cytotoxins or cytostatic
             compounds *such as* monomethyl Auristatin E and monomethyl
9              Auristatin F and certain variants, derivatives, analogues and salts
             thereof . . . ."
10

11   (Award at 41 (emphasis added).)  The rest of the Award's analysis is devoted to the meaning of

12   "such as," which appears only in subpart (a).  (Award at 42-45.)

13        But subparts (b) and (c) were manifestly *not* irrelevant.  Seagen amply demonstrated that

14   the Improvement IP included technology that qualified as "compositions and methods useful for

15   attaching the foregoing cytotoxic or cytostatic compounds to antibodies" (subpart (b)) or "any

16   related assays and methods SGI provides to Licensee pursuant to the Research Program" (subpart

17   (c)).  (*See* Memo at 14-15 & nn. 70-74.)  DSC never even argued to the Arbitrator that those

18   provisions were not "relevant."  By ruling against Seagen without addressing these provisions, the

19   Award is completely irrational and in manifest disregard of the law—particularly where the parties

20   and Arbitrator agreed that he would provide a "reasoned award."  *See Leeward Constr. Co. v. Am.*

21   *Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016) ("[a] reasoned award sets forth

22   the basic reasoning of the arbitral panel on the central issue or issues raised before it . . . .").  (*See*

23   Ex. 67; Ex. 68 at 1608:13–1609:12.)

24        DSC posits that "the Award's analysis of the relevant scope of Drug Conjugation

25   Technology . . . is applicable to all subparts of that term's definition."  (Opp. at 13.)  DSC's

26   argument is pure backfill—the Award never made such a finding.  Nor could it have.  Subpart (c)

27   covers "any related assays and methods SGI provides to Licensee pursuant to the Research

28

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

3

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Program."  Such assays and methods are not even arguably limited to "auristatins" or limited in any way that would have precluded Seagen's claim.  (Memo at 14.)  Similarly, subpart (b) covers "compositions and methods useful for attaching" cytotoxic or cytostatic compounds to antibodies. The unrebutted evidence showed that Seagen's confidential information was useful for attaching antibodies to many kinds of payloads, not merely auristatins.  (*Id*. at 15 n. 74.)  Thus, the Award could not have rationally applied to subparts (b) and (c) the same "drug payloads in the auristatin class" construction it applied for subpart (a).  (*Id*. at 15.)

Even as to subpart (a), DSC fails to rebut Seagen's showing that the Award adopts a completely irrational construction.  The Award's interpretation of the term "such as" to mean "limited to" divorces from its plain meaning and renders other language superfluous.  (*Id.*)

Moreover, the Award arrived at an interpretation that the parties had expressly rejected during their negotiations.  (Memo at 16; Dkt. 20-7, Ex. 63 ¶¶ 25-28.)  The Award does not mention any of this negotiation history, as DSC tacitly concedes.  All DSC can do is point to a footnote stating generically that "to the extent the aforementioned findings of fact are discordant with any testimony offered by a fact witness, an opinion offered by an expert witness, or documentary evidence that has been admitted into the record, the Arbitrator has not found that testimony/opinion/evidence persuasive and/or has not accorded it great weight when viewed in the context of the entire (voluminous) evidentiary record developed in conjunction with the Arbitration Hearing and the Reopened Arbitration Hearing."  (Award at 41 n.10.)  Nothing in that footnote provides any rationale for ignoring such crucial evidence.

DSC's reliance on a conclusory footnote cannot defeat Seagen's showing.  If DSC's approach were correct, arbitrators could insulate a wholly irrational award from challenge by simply including a general disclaimer.  No case supports such superficiality—particularly where, as here, the parties demanded a reasoned award.  *See Smarter Tools Inc. v. Chongqing SENCI Import & Export Co.*, No. 18-cv-2714 (AJN), 2019 WL 1349527, at *3-4 (S.D.N.Y. Mar. 26, 2019) (holding that arbitrator failed to deliver reasoned award by stating in conclusory fashion, that "[h]aving heard all of the testimony, reviewed all of the documentary proofs and exhibits, [he

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

4

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

does] not find support for STI's claims").

As in *Aspic Engineering & Construction Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162 (9th Cir. 2019), the Award impermissibly deviated from the contractual language based on the Arbitrator's views of commercially reasonability.  The Award expressly bases its contract interpretation on the Arbitrator's belief of what "a sophisticated international pharmaceutical conglomerate" would agree to.  (Award at 43; *see* Memo at 16-21.)  DSC contends this case differs from *Aspic* because the Award here does not mention the word "fairness," (Opp. at 16), but "commercial reasonableness" and "fairness" are the same thing:  as in *Aspic*, the Arbitrator's views of fairness trumped the Agreement's plain language.

### B.  The Award Does Not Include an "Independent Third Ground" As DSC Contends

DSC's final argument to salvage the irrational Award is to claim that it includes as an "independent third ground" a "factual finding" that DSC's technology did not qualify as an Improvement.  (Opp. at 18-19.)  Again, DSC argues that the Arbitrator did something he did not do.  The Award includes no such factual finding and no "independent third ground."

Following the Award's interpretation of "Drug Conjugation Technology," the Award states in footnote 12 that "for all the same reasons discussed above with respect to the term 'Drug Conjugation Technology,' Seagen has not proven by a preponderance of the relevant and credible evidence that any alleged 'Improvements' at issue in this proceeding meet the definition of the term . . . ."  (Award at 45 n.12.)  That is all.  This footnote is plainly not an "independent" ground. Rather, it asserts without analysis that its conclusion about "Improvements" follows for "the same reasons" as the contract interpretation of "Drug Conjugation Technology."  As shown above, that interpretation is completely irrational and acts as though important portions of the definition do not exist.  By relying on those "same reasons," the same irrationality infects the Award's conclusion in footnote 12.

Nor does the footnote include any factual findings.  DSC points to a different portion of the Award as supposed "factual findings as to the 'Improvement' requirements" (Opp. at 19 (citing

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

5

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Award at 44)), but that portion includes no such finding.  Instead, in a section discussing the meaning of "such as," it mentions only an expert witness's testimony that "the documentary evidence does not suggest that . . . Seagen personnel suggested – and far less clearly expressed – that DSC's ADC technology was plausibly related to or arose from Seagen's ADC technology." (Award at 44.)  The Award's conclusion from that evidence was the supposed "objective reasonableness of DSC's proposed interpretation" of the Collaboration Agreement.  (*Id.*)  That interpretation was the sole basis for the Award's conclusion—there was no separate factual finding on the evidence.

In short, DSC failed to rebut any of the arguments that Seagen raised.  Instead, it credited the Arbitrator with findings he did not make and distorted the Arbitrator's decision in a vain effort to make it sound rational.  DSC would not have resorted to such tactics if the Award was sound.

## IV.   SEAGEN'S PETITION TO VACATE IS NOT TIME-BARRED

DSC asks this Court to dismiss Seagen's petition as untimely.  It is not.  Seagen timely served DSC using the same method of service that the parties had—by agreement—used throughout the underlying arbitration; and DSC indisputably received the petition in a timely manner.  (Opp. at 20-21.)  Moreover, the Arbitrator recently clarified that the Interim Award is not final.  As a result, the time for Seagen to serve a petition to vacate has not yet begun to run.

### A.   Seagen Timely Served DSC by Email and Facsimile on November 10, 2022

Seagen filed its petition on November 10, 2022, less than three months after the Interim Award was delivered, and served DSC and its counsel that same day by email and facsimile consistent with the parties' previously agreed method of service.  (Dkt. 37 at ¶ 2 & Exs. 1 and 2.) The next day, DSC issued a press release, announcing that "Seagen Inc. filed a petition . . . to vacate the Arbitration Award."  (*Id.* at Ex. 3.)

Where, as here, the parties in an American Arbitration Association ("AAA") arbitration broadly agreed to service by email, email service of the petition to vacate is proper.  *See, e.g., Aperion Care, Inc. v. Senwell Senior Inv. Advisors*, No. 22 C 3120, 2022 WL 10505696, at *2 (N.D. Ill. Oct. 17, 2022) ("Because Senwell consented to electronic service in the arbitration,

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

6

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Aperion's email service of the notice to vacate was proper and timely."); *Corinthian Colls., Inc. v. McCague*, No. 09 C 4899, 2010 WL 918074, at *1 (N.D. Ill. Mar. 4, 2010) (consent to electronic service in AAA arbitration rendered notice timely); *see also Day & Zimmerman, Inc. v. SOC-SMG, Inc.*, C.A. No. 11-6008, 2012 U.S. Dist. LEXIS 151222, at *4-5 (E.D. Pa. Oct. 22, 2012) (because email was used in the underlying arbitration as the primary mode of communication, same agreement should apply to related litigation); *TVL Int'l, LLC v. Zhejiang Shenghui Lighting Co.*, C.A. No. 3:19-CV-393-RJC-DCK, 2021 WL 836875 (W.D.N.C. Feb. 3, 2021) (defendants consented to mail and email service by agreeing to the procedures set forth by arbitral tribunal).

The parties in this case agreed to arbitrate under the AAA's 2013 Commercial Rules (the "AAA Rules"). (Dkt. 13, Ex. 1, Collaboration Agreement, § 19.3.4.) Rule 43 addresses service of "papers, notices, or processes," not only for the arbitration but also for any court action in connection with the arbitration. *See* AAA R-43(a). While mail is the default service method, the AAA Rules further provide that "[w]here all parties and the arbitrator agree, notices may be transmitted by email or other methods of communication." AAA R-43(b).

As Rule 43 provides, the parties agreed to service by email. On December 4, 2019, the AAA case administrator proposed that "[a]ll communications *related to this case* will be sent by email" and solicited responses. (Ex. 69 at 2 (emphasis added).) Neither party objected (*see* Exs. 70, 71), and over the next two and half years, used email exclusively for service. (*See, e.g.*, Exs. 72, 73, 74, 75.) Even the Award was delivered to the parties by email. (*See* Ex. 76.) Seagen's petition to vacate is indisputably *related to* the arbitration, and its email service of the petition was consistent with the parties' agreement and years-long practice. Like the court in *Aperion*, this Court should find that timely email service is sufficient. Service in this case was also consistent with the parties' agreed method for providing notice under the Collaboration Agreement. (Dkt. 13, Ex. 1, Collaboration Agreement § 19.1 ("notice" under the Agreement should be "delivered personally or by facsimile (and promptly confirmed by personal delivery, first class air mail or courier), first class air mail or courier, postage prepaid (where applicable).").)

DSC does not deny these facts. Rather, DSC advances a cramped reading of AAA Rule

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

7

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

43 and cites to several decisions that are outliers or readily distinguishable.[1]  On its face, Rule 43 reaches beyond the arbitration to related court proceedings.[2]  Further, it also allows service by email if the parties agree, as they did here for "all communications related to the case."  None of DSC's cited cases involves a similarly broad agreement to email service.

Even if there were any imperfections in service, they should be excused.  In the seminal case of *InterCarbon Bermuda, Ltd. v. Caltrex Trading & Transport Corp.*, 146 F.R.D. 64 (S.D.N.Y. 1993), the court held that failure to strictly comply with methods for serving a foreign defendant would not defeat a motion to vacate because "considerations of basic fairness are important as well."  *Id.* at 71.  These fairness considerations apply equally here.

DSC reliance on *IKON Global Markets v. Appert*, No. C11-53RAJ, 2011 WL 9687842 (W.D. Wash. July 28, 2011) ignores that case's fundamental differences.  The *IKON* parties had not agreed to alternative service methods.  Critically, *IKON* also did not involve a foreign defendant.  The *IKON* court required the moving party to provide notice according to methods specified in FAA section 12.  *Id.* at *3.  But "Section 12 provides no method of service for foreign parties not resident in any district of the United States."  *Intercarbon*, 146 F.R.D. at 67.  Thus, the *IKON* court did not need to grapple with fairness considerations such as the reality that compliance with section 12 is "virtually impossible" when serving a foreign corporation.  *See also Republic of Argentina v. BG Grp. PLC*, 715 F. Supp. 2d 108 (D.D.C. 2010) (finding service sufficient where "a petitioner's compliance with Section 12 of the FAA would be virtually impossible because the [Hague] Convention requires that a 'central authority' located within the receiving country be

---

[1] In *Dalla-Longa v. Magnetar Capital LLC*, 33 F.4th 693 (2d Cir. 2022), the parties' agreement to use email was limited to submissions to the "panel usual or expected correspondence, including such filings as motions, briefs, scheduling and postponement requests, and exhibit and witness lists."  *Id.* at 695.  *O'Neal Constructors, LLC v. DRT Am., LLC,* 991 F.3d 1376, 1378 (11th Cir. 2021) involved emailing of a memorandum in support of a motion to vacate, followed by service of the motion to vacate several weeks later by the US Marshals Service.  And in *Shaut v. Hatch*, No. 1:18-cv-420, 2018 WL 3559081 (N.D. Ohio July 24, 2018), the court found email service insufficient because counsel for the party petitioning to vacate had just weeks before rejected email service of the other party's petition to confirm, which made any argument concerning consent and the use of email in the underlying arbitration "ring false."  *Id.* at *3.  The court in *Benedict v. Amgen USA, Inc.*, No. 1:19-cv-113, 2019 WL 1597007 (N.D. Ohio Apr. 15, 2019), summarily followed *Shaut* without any discussion of AAA Rules or whether the parties previously agreed to use email service.

[2] *See, e.g., In re Trans Chem. Ltd. v. China Nat. Mach. Import & Export Corp.*, 978 F. Supp. 266, 298-300 (S.D. Tex. 1997) (finding an earlier analog to Rule 43 constituted a "special arrangement for service" under the Foreign Sovereign Immunities Act for a petition to confirm an arbitral award).

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

8

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

1   solely responsible for serving . . . and these 'central authorities can and do take significantly longer

2   than 90 days to arrange for service of process'") (subsequent history omitted).[3]  *Id.* at 120.

3          **B.       Because the Interim Award Was Not Final, the Time to Serve Has Not Begun**

4          Although the facts establish that Seagen timely served the Petition, the Court need not wade

5   into the service issues.  Subsequent to Seagen's petition, the Arbitrator made clear that the Interim

6   Award is not final.  As a result, the three-month deadline to serve a motion to vacate has not started.

7          Under the FAA, the time to serve a motion to vacate begins when the arbitrator delivers a

8   final award.  *See Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist.*

9   *Council 91*, 43 F.4th 628, 631 (6th Cir. 2022).  In general, an arbitral award is not deemed "final"

10  unless it resolves all issues submitted to arbitration, or the arbitrator intended that it finally resolve

11  all such issues.  *See, e.g., Millmen Local 550 v. Wells Exterior Trim,* 828 F.2d 1373, 1386-77 (9th

12  Cir. 1987); *In re Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411 (2d Cir. 1980).

13         The Award here was ambiguous as to whether it was intended to be final.  It is called an

14  "Interim Award," refers to itself throughout as "interim," and references AAA Rule 47(b), which

15  addresses an arbitrator's power to make interim or partial rulings or awards.  (Award at 20, 45.)

16  The Award also states that "[t]he Arbitrator *reserves and retains jurisdiction over all issues*

17  outlined above, expressly including any award of *inter alia* attorneys' fees, which shall be

18  addressed in the Final Award."  (Award at 45 (emphasis added).)  Yet the Award further states

19  that it "is fully and finally dispositive with respect to all factual issues, legal and equitable

20  arguments, and defenses raised in conjunction with the Parties' claims and requests for relief, with

21  the sole exception of the Parties' respective requests for an award of, inter alia, attorneys' fees."

22  (Award at 20.)  As a result, Seagen filed the petition as a precaution, lest DSC later argue the

23  Award was final (as it does here) and that the time for challenge had passed.

24         The Arbitrator has since confirmed that he views the Interim Award as non-final.  In a

25  December 19, 2022 order, which DSC ignores, the Arbitrator stated that "the Arbitrator notes that

26  no Final Award has been issued in this arbitration pursuant AAA Rule R-47(b), and thus, Seagen's

27

28

---

[3] In a parallel federal court litigation between the parties, it took Seagen nearly 4 months to serve DSC pursuant to the Hague Convention.

pending petition to vacate the Interim Award appears to be interlocutory." (Dkt. 50, Ex. A at 3.) The Arbitrator's confirmation puts to rest any question over whether the Award is final. *McKinney Restoration, Co. v. Ill. Dist. Council No. 1*, 392 F.3d 867, 871 (7th Cir. 2004) (finality is judged by whether the award was "intended by the arbitrator to be his complete determination of every issue submitted to him").

DSC's suggestion that an award can be deemed final if it "finally and conclusively dispose[s] of a separate and independent claim," misstates Ninth Circuit law. (Opp. at 7.) As explained in *Pacific Reinsurance Management Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991), "judicial review of *non-final* arbitration awards 'should be indulged, if at all, only in the most extreme cases'" (emphasis in original). In DSC's cited *Hyosung (America) Inc. v. Tranax Technologies Inc.*, No. C 10- 0793 VRW, 2010 WL 1853764, at *1 (N.D. Cal. May 6, 2010), the court rested its decision on the arbitrator's intent to make his award final, which was evidenced by his decision to formally bifurcate the arbitration and to have his award in the first phase be immediately payable. *Id.* at *4.

More relevant is *Swenson v. Bushman Investment Properties, Ltd.*, 870 F.Supp.2d 1049 (D. Idaho 2012). There, the arbitrator issued an interim award, stating "that he was keeping the hearing open until 'we deal with interim award issues, attorneys' fees, interests, those types of things.'" *Id.* at 1054. The arbitrator later issued a final award, which a party moved to vacate. The defendants argued the motion was untimely because "that the clock started ticking . . . when the arbitrator issued his interim award." *Id.* The court rejected this argument because the award "does not state it is final and there is no indication that the arbitrator intended it to be final." *Id.* The same reasoning applies here. The Award is not final under the FAA, and the time limit for Seagen to file a vacatur petition will not begin to run until the Arbitrator issues a final award.

## V.   DSC'S REQUEST FOR COSTS AND FEES IS ABSURD

DSC ends its opposition with a request that the Court award it costs and fees "because Seagen's cynical attacks on the Award go beyond legitimate advocacy." (Opp. at 22-24.) Far from "cynical" or illegitimate, Seagen had every reason to challenge the Award, as set forth above.

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

10

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Seagen's motion is plainly not brought in "bad faith, vexatiously, wantonly or for oppressive reasons." *Ministry of Def. & Support for the Armed Forces v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1104 (9th Cir. 2011).  Seagen acknowledged the substantial deference owed to arbitration awards, but showed that the Interim Award here is "completely irrational," disregards clear contract terms to "dispense [its] own brand of industrial justice," and exhibits a "manifest disregard of the law."  (Memo at 1.)  All three are valid grounds for a motion to vacate.  *Aspic Eng'g & Constr. Co.*, 913 F.3d at 1166-67.

## VI.    CONCLUSION

For all these reasons, the Court should vacate the Interim Award pursuant to 9 U.S.C. § 10. Moreover, a rehearing should be ordered before a new arbitrator.[4]

Dated:  February 10, 2023

I certify that this memorandum contains 4,193 words, in compliance with the Local Civil Rules.

 */s/Christopher B. Durbin*
Christopher B. Durbin (WSBA No. 41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA  98101-1355
Tel.:     (206) 452-8700
Fax:     (206) 452-8800
Email: cdurbin@cooley.com

Michael A. Jacobs (*pro hac vice*)
Matthew A. Chivvis (*pro hac vice*)
Matthew I. Kreeger (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Tel.: (415) 268-7000
Fax: (415) 268-7522
Email: MJacobs@mofo.com
            MChivvis@mofo.com
            MKreeger@mofo.com

---

[4] DSC incorrectly contends that a rehearing before a new arbitrator would be "contrary to established Supreme Court precedent."  (Opp. at 23 n.14.)  Courts have broad discretion to fashion relief, including remand to a new arbitrator where appropriate.  *See Aircraft Braking Sys. Corp. v. Loc. 856*, 97 F.3d 155, 162-63 (6th Cir. 1996); *Montes v. Shearson Lehman Bros., Inc.*, 128 F.3d 1456, 1464 (11th Cir.1997) (remanding to new arbitrator where an arbitrator acted in manifest disregard).  Contrary to DSC's suggestion, the Supreme Court did not address this issue in *Stolt-Nielsen S.A. v. Animalfeeds International Corp.*, 559 U.S. 662 (2010).

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-cv-01613-JLR                    11                    COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Evelyn L. Chang (*pro hac vice*)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Tel.: (650) 813-5600
Fax: (650) 494-0792
Email: EvelynChang@mofo.com

Hui Zhao (*pro hac vice*)
MORRISON & FOERSTER LLP
701 Brazos Street Suite 1100
Austin, Texas 78701-3232
Tel.: (512) 767-0324
Fax: (650) 494-0792
Email: HZhao@mofo.com

*Attorneys for Petitioner Seagen Inc.*

SEAGEN INC.'S REPLY I/S/O PETITION
TO VACATE ARBITRATION AWARD
Case No. 2:22-CV-01613-JLR

12

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700